GALVESTON TRIBUNE v. GUISTI et al.†

(Court of Civil Appeals of Texas. Jan. 12, 1911. Rehearing Denied Feb. 2, 1911.)

1. LIBEL AND SLANDER (§ 15*)—WORDS ACTIONABLE.

Unless the natural and reasonable conclusion to be drawn from an alleged libelous publication considered in connection with the circumstances alleged is that it was intended thereby to make a charge against or a statement concerning the person mentioned therein which would tend to injure his reputation and expose him to public hatred, contempt, ridicule, or financial injury, the publication is not libelous under Laws 1901, c. 26, defining libel, though the person mentioned may have suffered injury by reason thereof.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 1–9; Dec. Dig. § 15.*]

2. LIBEL AND SLANDER (§ 15*)—WORDS ACTIONABLE.

A newspaper article reciting that a barroom in a corner grocery near a medical school was in operation, that a young woman, the daughter of the proprietor and his assistant in the grocery business, was found behind the bar, and had stated that sales had been made to students, in violation of law, but that the sales were made without knowing that the buyers were students, and stating that the place had been complained of, and that it was understood that students inclined to patronize such places were attracted there for some reason, did not justify the inference that it was intended to impute unchastity to the daughter, nor could the publisher have reasonably anticipated that it would have caused the daughter to lose the respect of her acquaintances, nor have tended to injure her reputation and expose her to public hatred, ridicule, or contempt or financial injury, and hence was not libelous.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 1–9; Dec. Dig. § 15.*]

3. LIBEL AND SLANDER (§ 97*) — ACTIONS — QUESTIONS FOR COURT—INNUENDOES.

The question whether an innuendo charged in the petition in an action for libel is a reasonable inference from the statement complained of, and the facts alleged in connection therewith, is a question for the court, and unless such question can be decided affirmatively, a general demurrer to the petition must be sustained.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 234–236; Dec. Dig. § 97.*]

4. LIBEL AND SLANDER (§ 125*) — GENERAL VERDICT—SPECIAL DAMAGES.

In an action for libel, where the court charged that if the jury found for plaintiff on a certain claim, they could award her general damages, but if they found for plaintiff on the claim that the publication charged her with want of chastity, they might award her special damages, and suggested forms of verdict in case both general and special damages should be found, and in case only general damages should be found, and the jury used the form of verdict granting plaintiff only general damages, the verdict was, in effect, a finding against plaintiff on the claim that the publication charged her with unchastity, and, where not complained of, was conclusive against the right to recover upon such claim.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 374; Dec. Dig. § 125.*]

5. APPEAL AND ERROR (§ 1175*)—DISPOSITION OF CAUSE — REVERSAL — RENDERING FINAL JUDGMENT.

Ordinarily, when the judgment of a trial court overruling a general demurrer to a petition is reversed, the appellate court should not render a judgment for appellant, but such rule does not apply where it appears that it is not possible to so amend as to state a cause of action.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4573–4587; Dec. Dig. § 1175.*]

Appeal from District Court, Galveston County; Clay S. Briggs, Judge.

Action by Pietrina Guisti and others against the Galveston Tribune. Judgment for plaintiffs, and defendant appeals. Reversed and rendered.

Wm. B. Lockhart, for appellant. Marsene Johnson, Geo. G. Clough, Aubrey Fuller, and Elmo Johnson, for appellees.

PLEASANTS, C. J. This is a suit to recover damages for libel, brought by the appellee Pietrina Guisti against the Galveston Tribune, a corporation, engaged in the business of publishing a newspaper in the city of Galveston, known as the Galveston Tribune. Before the trial in the court below the plaintiff intermarried with Amerigo Collucci. The amended petition upon which the cause was tried, and in which the husband joined pro forma, alleged that the defendant on or about the 14th day of December, 1908, through its newspaper, the Galveston Tribune, a daily paper having a large circulation in Galveston county and throughout the state of Texas, falsely, maliciously, recklessly, and wantonly printed, published, and circulated a malicious, slanderous libel of and concerning plaintiff, Pietrina Collucci, who was on said date an unmarried woman over the age of 21 years and resided with her father, T. Guisti, in the city of Galveston. The publication alleged to be libelous and the allegations of the petition upon which plaintiffs seek recovery are as follows:

"No More Liquor Sold to Students.

"As stated in the Tribune Friday evening, one of the first licenses issued by the city since August 1st for the conducting of a corner grocery saloon within the residence section prohibited by the districting ordinance was to T. Guisti, to sell liquor at 902 Mechanic street. One of the main objections

---

to this saloon previous to the passing of the ordinance was its close proximity to the State Medical College, and the allegation that the proprietor of the place violated the provisions of the Baskin-McGregor law and the conditions of his bond by selling liquor to students. With the reopening of the barroom, the complaints to the dean of the college have been again renewed, and a personal investigation of the place by a representative of this paper this morning revealed the following facts: The place is open as usual for business, and, when the reporter called, liquor was being sold over the bar, together with lunch, in fact at the time a man was standing at the bar drinking a bottle of porter and eating a sandwich. The proprietor of the place was not present, but a young woman behind the bar, in answer to the question as to whether or not students were patrons of the place, stated in an excited way that 'She was going to tell Dr. Carter to put bells around the necks of the students, so they could tell who they were. When we ask young men if they are students, they get mad and tell us that it is none of our business. We can't tell, and we are here to do business.' Asked if there had been any sales to students since the place reopened, she admitted that there had been, and that it took place on Saturday morning. 'Two young men came in and asked for some wine. They told me they were not students, and I sold them what they wanted; then after they had drank it, they said they were students and laughed.' On the door leading from Ninth street into the barroom annex, on the wall facing the door and behind the bar, are signs printed by hand on white cardboard, with the following wording: 'No Liquor of any Kind Sold Here to Students.' The young woman pointed to these signs and stated that they were put there on Saturday evening for the students to read themselves when they came in. Asked if she was not familiar with the provisions of the law regulating such sales, and that dealers are supposed to know whether customers are students or not, she answered 'That she did not know for sure,' but that 'they did not want to sell to students.' Bond has such provision. It is set forth in all liquor dealers' bonds, among other things, that the bond is conditional that the principal, agent, or employé will not sell or permit to be sold or given away any spirituous, vinous or malt liquors, or medicated bitters to a student of any institution of learning. It is also stated by legal authorities that ignorance of this law or of the fact that the dealer or employé cannot tell who a student is does not in any manner excuse; they are supposed to know their customers, and in case of doubt to take the safe course and refuse to sell. The place named above has been complained of, and it is understood from neighbors that the

students inclined to patronize such places are attracted there for some reason. On two of the opposite corners are located corner groceries which formerly had bar annexes, but neither of them have as yet renewed their licenses. A woman in charge of one of the places stated this morning that she did not intend to take out a license, as she realized that the time was short when the place would be allowed to exist, and she was satisfied to continue her other business without beer."

The plaintiff further alleged that the "young woman" referred to by defendant in the article above quoted, meant and was by defendant intended to mean the plaintiff, Pietrina Collucci (née Guisti); and that said article is wholly false and untrue, and is scandalous, libelous and defamatory.

"Plaintiffs further alleged that said false, slanderous, libelous statement published and circulated by defendant, as aforesaid, on said December 14, 1908, was read by a great number of citizens of Galveston county, Texas, and was read by numbers of citizens of the state of Texas residing in other counties in said state, to the shame, humiliation, and distress of mind and injury. to the reputation of the plaintiff, Pietrina Collucci (née Guisti) and to her great damage, general and special, as hereinafter fully set out.

"Plaintiff further alleged that by the following words used in said publication, to wit, 'The proprietor of the place was not present, but a young woman behind the bar, in answer to the question as to whether or not students were patrons of the place, stated in an excited way that "she was going to tell Dr. Carter to put bells around the necks of the students, so they could tell who they were." "When we ask young men if they are students, they get mad and tell us that it is none of our business. We can't tell, and we are here for business." Asked if there had been any sales to students since the place reopened, she admitted that there had been and that it took place on Saturday morning. "Two young men came in and asked for some wine. They told me they were not students, and I sold them what they wanted; then after they had drank it they said they were students and laughed."' Defendant meant and intended to mean and publish that the plaintiff, Pietrina Collucci (née Guisti), was behind the bar, meaning the barroom; and that defendant meant and intended to mean and publish that said plaintiff was offering for sale and selling and had sold intoxicating liquor in a barroom to students of an institution of learning in violation of law.

"Plaintiff further alleged that the published statement of defendant that she, the said Pietrina Collucci (née Guisti), was a barmaid, serving and selling intoxicating liquors in a common barroom, caused her to lose the respect and esteem of her neigh-

bors and acquaintances in the community in which she lived, and that the published statement of defendant, that she, said plaintiff, Pietrina Collucci (née Guisti) was aiding and abetting and conniving at violations of the law regulating the sale of intoxicating liquors in the state of Texas, impeached her integrity, and caused an ill opinion of her in the community in which she lives, and caused her to sustain damages by reason of the injury to her reputation as a woman of integrity, good conduct and good demeanor in the community in which she lives, and caused her to suffer much mental anguish and humiliation.

"And said plaintiff, Pietrina Collucci (née Guisti), further alleges that by the use of the following false, slanderous, and libelous words in said published statement, to wit, 'The place named above has been complained of, and it is understood from neighbors that the students inclined to patronize such places are attracted there for some reason;' defendant meant, as an addition to the other matters hereinbefore quoted, that this plaintiff was used by her father as a barmaid in said barroom for the purpose of attracting medical students and other persons there for patronage; and meant and was intended to mean by the defendant that this plaintiff was a person of loose morals, and a person addicted to lascivious conduct, and that she, this plaintiff, was an attraction placed in said barroom by her father to entice and attract said medical students and other persons into said barroom, and that said published words last above quoted meant, and were by defendant intended to mean, that this plaintiff was an unchaste woman.

"And this plaintiff, Pietrina Collucci (née Guisti), alleges that by reason of said last-quoted false, slanderous, and libelous words of and concerning her, with the imputations and insinuations of defendant as aforesaid, caused her to sustain special injury and damages to her reputation as a woman of good morals, good conduct, good propriety and virtue, and caused her to suffer much mental pain, agony, distress of mind and humiliation, and degraded her in the community in which she lives.

"And plaintiffs further allege that the whole of said libelous article tended to injure the reputation of the said young lady plaintiff, and thereby exposed her to public hatred, contempt, ridicule, and disgrace in the community in which she lives.

"And plaintiffs further allege that the whole of said false, scandalous, and libelous article published and circulated by defendant, on the date aforesaid, did bring odium upon the plaintiff, Pietrina Collucci (née Guisti); and did induce an ill opinion of her in and about the community in which she resides.

"And plaintiffs further allege that at the time of said libelous publication by defendant, the plaintiff, whose name at that time was Pietrina Guisti, was a lady over the age of 21 years, and that she resided at the home of her father, T. Guisti, and assisted him in his grocery store, but not in the room in which malt liquors were by her father legally sold; and that said plaintiff, Pietrina, was the only young woman living or employed in the dwelling and store of her said father, all of which defendant and the neighbors and acquaintances of said plaintiff then and there well knew, and the defendant intended to and did identify and refer to her as the young woman libelously referred to in said publication.

"Wherefore plaintiffs allege that defendant by reason of the publication and circulation of said false, scandalous, libelous, slanderous, and defamatory statement and statements of and concerning said Pietrina Collucci (née Guisti), did cause her to sustain great damage by causing her to suffer great mental pain and anguish, and shame, humiliation, and disgrace, and did cause her to sustain special damages and injury to her fair name, good reputation, and integrity, to her total damage twenty thousand dollars. Wherefore plaintiffs pray as in their original petition filed heretofore that defendant be cited to appear and answer this petition; and that on final trial hereof, plaintiff, Pietrina Collucci, have judgment against defendant for her said damages in said total sum of twenty thousand ($20,000) dollars, for general relief, with costs of suit."

Defendant's answer contains a general demurrer and general denial, and also special exceptions and pleas, the nature of which it is unnecessary to state. The trial in the court below with a jury resulted in a verdict and judgment in favor of plaintiffs for the sum of $5,000.

Appellant's first assignment of error complains of the judgment of the trial court overruling the general demurrer to the petition. The proposition advanced under this assignment is, in substance, that the words used in the publication complained of are not libelous per se, and the facts alleged, considered in connection with the language of the publication, are not sufficient to justify or support the innuendoes charged in the petition. An act of the Legislature of this state passed in 1901 (Acts 1901, p. 30) defines a libel as follows: "A libel is a defamation expressed in printing or writing, or by sign or pictures, or drawings, tending to blacken the memory of the dead, or tending to injure the reputation of one who is alive, and thereby expose him to public hatred, contempt or ridicule, or financial injury, or to impeach the honesty, integrity or virtue or reputation of any one, and thereby expose such person to public hatred, ridicule, or financial injury."

This statute does not enlarge the common-law definition of libel as previously understood and declared by our courts, and mani-

festly its purpose was only to fix certainly and clearly by statute a definition which might not be changed or modified by the courts to meet the supposed justice of a particular case. Unless the language of the publication upon which the libel is predicated, taken in connection with the facts and circumstances alleged by the complainant, are reasonably calculated to produce the results stated in the statute, viz., "to blacken the memory of the dead," or "to injure the reputation of one who is alive, and thereby expose him to public hatred, contempt, or ridicule or financial injury, or to impeach the honesty, integrity, or virtue or reputation of any one, and thereby expose such person to public hatred, ridicule or financial injury," no libel is shown. Tested by this statute, we cannot see anything in the language of the publication considered in itself, or when taken in connection with the facts or circumstances alleged in the petition, which could reasonably cause any injury to Mrs. Collucci. If this is true, the fact that she did suffer injury as claimed by her by reason of said publication would not make the appellant liable therefor. The principle that one shall only be held accountable for such natural and probable consequences of his acts or omissions as he might reasonably have anticipated is sound in law and in morals, and is firmly fixed in the decisions of the courts of this state. This principle has been uniformly recognized and applied in determining the question of whether a publication complained of as libelous will support such charge.

In the case of Belo & Co. v. Smith, 91 Tex. 225, 42 S. W. 850, it is held that in determining this question the whole publication must be considered, and the question is what effect the publication would have upon the mind of the ordinary reader. This is but another way of saying that unless the natural and reasonable conclusion to be drawn from the language of the publication, considered in connection with the facts and circumstances alleged in the petition, is that it was intended thereby to make a charge against, or a statement concerning, the person mentioned therein, which would tend to injure his reputation and expose him to public contempt, hatred, ridicule or financial injury, the publication is not libelous.

The petition alleges that the complainant "resided at the home of her father, T. Guisti, and assisted him in his grocery store, but not in the room in which malt liquors were by her father legally sold, and that said plaintiff, Pietrina, was the only young woman living or employed in the dwelling or store of her father." The corner grocery with the barroom annex in which malt liquors were sold was legally conducted by plaintiff's father, and she lived with him at that place, and was his assistant in carrying on the grocery business. Under these circumstances it could not have been reasonably anticipated by the defendant that the publication of a statement that the plaintiff sold beer in her father's annex to his grocery business where he was lawfully engaged in the business of selling malt liquor "would cause plaintiff to lose the respect and esteem of her neighbors and acquaintances in the community in which she lived" or would tend to injure her reputation and thereby expose her "to public hatred, contempt, or ridicule or financial injury." The statement that she had admitted making a sale to students of the University does not charge her with a crime, and when the publication further shows that she did this innocently, without knowing that she was selling to students, and that she did not intend or desire to sell to students, but was imposed on in the matter, such publication does not support the innuendo that the complainant was thereby charged with "aiding and abetting and conniving at violation of the law regulating the sale of intoxicating liquor." No ordinary reader would place such construction upon the publication, but on the contrary the publication as a whole shows that she and her father intended and were trying to conduct the business in accordance with the requirements of his liquor dealer's bond.

No facts are alleged which would justify the innuendo charged in the petition that by the statement in the publication, "The place named above has been complained of, and it is understood from neighbors that students inclined to patronize such places are attracted there for some reason," defendant intended to reflect upon the virtue and chastity of the complainant. Such an inference from this language is wholly unreasonable. It is inconceivable that a young woman whose reputation for virtue and chastity is above reproach as plaintiff's must be presumed to be, could have that reputation injured by the statement above quoted used in the connection in which it appears in the publication. It is perfectly apparent from the publication that the complaint against the house mentioned in the statement was that students of the University obtained liquor there, and the most reasonable and natural inference from the remainder of the statement is that students who were inclined to patronize places where liquor was served were attracted to this place either because they could more easily obtain liquor there, or were treated with more consideration and given more attention and better service than at other places of this kind. To impute to this statement a meaning so at variance with the ordinary meaning of the words used when there is nothing in the circumstances and facts shown in the petition which tends in the least to indicate that the statement was intended to charge the plaintiff with a want of chastity or to intimate any doubt of her virtue is a wrong to both plaintiff and defendant. No greater

outrage can be perpetrated upon a virtuous woman than an imputation of her chastity, and defendant should not be held guilty of this outrage when the statement made by it, considered in the connection with the facts and circumstances under which it was made, cannot be reasonably construed as a reflection upon plaintiff's chastity. The question is not what construction the witnesses in the case may put upon the statement, but what is its reasonable and natural meaning in view of the facts and circumstances under which it was made as alleged in the petition.

The statement may be ambiguous in the sense that the attraction referred to is not pointed out, but this ambiguity will not support an innuendo that is not a reasonable and natural inference from the words used, considered in connection with the facts shown. Suppose the innuendo charged in this case was that gambling was carried on at plaintiff's place of business, and no facts or circumstances were alleged which would make it reasonably probable that the statement would be so understood by the ordinary read-.er. Can there be any doubt that in such case the statement should be held insufficient to support the innuendo? We think it just as clear that this statement does not support the innuendo that plaintiff was unchaste. The fact that the publication complained of will justify two or more reasonable inferences does not authorize an unnatural and unreasonable inference to be drawn therefrom. The question of whether the innuendo charged in the petition is a reasonable inference from the statement complained of and the facts alleged in connection therewith is a question for the court, and un-.less this question can be decided affirmatively a general demurrer to the petition should be sustained. Harris v. Santa Townsite Co., 125 S. W. 77; 13 Enc. Pl. & Pr. 54; 25 Cyc. 545, and cases there cited. The power of newspapers in advancing and conserving the moral and material welfare of the communities in which they are published and circulated is great, and so is their power to cause irreparable injury to the individual citizen by the intentional or careless publication of false statements affecting his personal character or private business. They should be held to strict responsibility for injury caused by false publications appearing in their columns, but are not liable for damages caused by an unwarranted and unreasonable construction of language used by them when there is nothing in facts shown to justify the conclusion that such construction was intended by the writer or would be given the language used by the ordinary reader. It follows from what we have said that the trial court should have sustained the general demurrer.

The trial court instructed the jury in substance that if they found for the plaintiff on the claim that the publication charged plaintiff, Pietrina Collucci, with being a common barmaid, and with aiding, abetting, and conniving at violations of the law regulating the sale of liquor they should award plaintiffs general damages, but if they found for plaintiffs on the claim that the publication charged said plaintiff with a want of chastity they might award plaintiff special damages; and further instructed them:

"(12) If you should find for the plaintiff, the form of your verdict should you find for both general and special damages, may be substantially as follows: 'We, the jury, find for the plaintiff in the sum of $——— as general damages, and $——— as special damages.'

"If you should find for the plaintiff general damages only, the form of your verdict may be substantially as follows: 'We, the jury, find for the plaintiff in the sum of $——— as general damages.'

"If you find for the plaintiff for special damages only, the form of your verdict may be substantially as follows: 'We, the jury, find for the plaintiff for $——— as special damages.' Filling in the blank space in each instance with such sum, if any, which you may believe plaintiff entitled to recover, if anything."

The verdict returned by the jury is as follows: "We, the jury, find for the plaintiffs in the sum of $5,000.00 as general damages."

The effect of this verdict under the charge given by the court is a finding against plaintiffs on the claim that the publication charged Mrs. Collucci with unchastity. This finding is not complained of by appellees, and is conclusive against their right to recover upon this claim. Ordinarily, when the judgment of a trial court overruling a general demurrer to a petition is reversed, the appellate court should not render a judgment in favor of the appellant because the plaintiff in such case by an erroneous ruling of the trial court ought not to be deprived of his right to amend his petition. The rule, however, should not be followed when it appears, as in this case, that it is not possible to so amend as to state a cause of action.

We do not think a charge of libel can be predicated upon the publication complained of in view of the undisputed facts pleaded and proven by the plaintiff in regard to the first innuendo charged in the petition and the verdict of the jury upon the second.

We are of the opinion that the judgment of the court below should be reversed and judgment here rendered for the appellant, and it is so ordered.

Reversed and rendered.