MISSOURI, K. & T. RY. CO. OF TEXAS v. MOSES.

(Court of Civil Appeals of Texas. Austin. Jan. 24, 1912. Rehearing Denied Feb. 28, 1912.)

1. LIBEL AND SLANDER (§ 7*)—WORDS ACTIONABLE.

The general auditor of a railroad company stated to a ticket agent that, unless he made good a certain shortage resulting from the acts of a fellow employé which the agent had failed to promptly report, the company which had made his bond would be liable. He also asked the agent why he had not accounted for the money, but in the same connection stated that the agent had a good record, and that he believed him to be honest, and disclaimed any intention of charging him with theft or embezzlement. *Held,* that the auditor's statements were not libelous or slanderous.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 17–78; Dec. Dig. § 7.*]

2. TRIAL (§ 169*).—PEREMPTORY INSTRUCTION —WANT OF EVIDENCE.

Where there was an entire want of evidence to show that the defendant made the libelous and slanderous statements alleged, either directly or by innuendo, a peremptory instruction should have been given for defendant.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 341, 381–387, 389; Dec. Dig. § 169.*]

3. EVIDENCE (§ 260*) — ADMISSIBILITY—ACTIONS—CONSPIRACY.

Where, in an action against a railroad company for a libelous charge of embezzlement, alleged to have been made by its auditor, there was no evidence of any conspiracy between the auditor and a representative of the company which had bonded plaintiff as ticket agent for the railroad company, evidence of libelous charges made by the bonding company's representative in the auditor's absence was inadmissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1010–1012; Dec. Dig. § 260.*]

4. APPEAL AND ERROR (§ 1175*)—DECISION ON REVIEW.

Under Rev. St. 1895, art. 1027, providing that the Court of Civil Appeals on reversing a case shall, with certain exceptions, render such judgment as the court below should have rendered, it becomes the duty of the Court of Civil Appeals, whenever the trial court should have instructed a verdict for the defendant and has failed to do so, to reverse the case and render judgment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4573–4587; Dec. Dig. § 1175.*]

Appeal from District Court, Hill County; W. C. Wear, Judge.

Action by L. S. Moses against the Missouri, Kansas & Texas Railway Company of Texas. From a judgment for plaintiff, defendant appeals. Reversed, and judgment rendered.

Alex S. Coke and Ramsey & Odell, for appellant. Frazier & Shurtleff and W. C. Morrow, for appellee.

RICE, J. This suit was brought by appellee against appellant to recover damages claimed to have been sustained by reason of alleged slanderous and libelous statements made by appellant verbally and in certain communications alleged to have been written by its officers and agents concerning a shortage in the account of appellee as ticket agent for appellant. At the time of the occurrence which forms the basis of this complaint, appellee was the ticket agent of appellant at its passenger depot in Hillsboro, which position he had filled for several years prior thereto. As such ticket agent he had given a fidelity bond furnished by the National Surety Company. He had sole charge of said ticket office during the daytime, and exclusive control of its ticket cases, safe, and cash drawer, the combinations of which were alone known to him. It was his duty to make weekly and monthly reports of the sales of tickets and amount of cash received therefor to the general auditor of the company, together with daily remittances therefor. During December of 1908, appellee discovered a discrepancy between the money he actually had on hand and what he should have had, as evidenced by his report, to the amount of $320. Believing at first that this was a mere error in accounting, he sought

and obtained assistance from the local agent for the purpose of rechecking his account, at which time he discovered that the shortage actually existed. This shortage however, was not at any time reported to the company, though the same continued to increase until it reached the sum of $503; but weekly and monthly reports were sent in to the company, wherein said shortage was concealed from it. This was done by withholding his monthly reports for a few days until the cash received was sufficient to make the amount tally with the report. On the 6th of April next thereafter the traveling auditor of appellant visited Hillsboro for the purpose of checking the station, when appellee, for the first time, reported this shortage to him. Appellee, in the meantime, suspicioned one Stann, the telegraph operator working in said office with him of the theft of said money, which fact had been reported to the deputy sheriff and Mr. Frazier, county attorney of Hill county; and, acting under their advice, by means of marked bills, Stann was afterwards arrested, charged with and convicted of the theft of $1 of money extracted from the cash drawer in the office.

Formal demand was made upon appellee by William O'Connell, general auditor of appellant, for the payment of this shortage, the payment of which, however, was declined on the part of appellee. In the meantime the National Surety Company having learned of this shortage through Wm. H. Clauson, their representative, called upon and insisted that appellee should make good the same, which was refused. At the instance of said Clauson, it seems that a conference was arranged to take place at Dallas between appellee and O'Connell for the purpose of discussing and adjusting this matter with the latter, at which conference appellee was represented by Mr. Frazier, county attorney, and the company by its assistant general attorney, Mr. McKnight. During this conference Mr. Frazier recounted what had taken place with reference to Stann, detailing circumstances tending to show Stann's bad character and dishonesty, and taking the stand that appellee was not responsible for the shortage, because, as he contended, his bond was not intended to cover any loss except such as might be occasioned by appellee's theft or embezzlement. O'Connell, however, replied, in substance, that while he did not for a moment believe that appellee was guilty of embezzlement or theft of the money, and while Stann might have gotten it, still, in his opinion, appellee was responsible because of his negligence in safeguarding the money and his failure to promptly report the loss to the company, and that, if appellee did not make the shortage good, the bonding company would have to do it. Appellee's bond was not offered in evidence, and the record fails to disclose

that it was exhibited or in possession of either party during this conference.

The petition, though lengthy and elaborate, when analysed, only presents three distinct grounds of liability, to wit: First, it alleges that appellant unlawfully and wrongfully charged appellee with the crime of embezzlement both directly and by innuendo; and, second, alleges that appellant entered into a conspiracy with one Wm. H. Clauson, the representative of the National Surety Company, to extort money from appellee. Appellant filed an answer containing numerous special exceptions, a general denial, and a special defense unnecessary to be noticed. There was a jury trial, resulting in a verdict and judgment in behalf of appellee, from which this appeal is prosecuted.

Notwithstanding the allegations of the petition, the charge of the court, after submitting the first two issues presented, told the jury that if they believed the defendant's agent entered into a conspiracy with Clauson, the agent of the surety company, to charge the plaintiff with the crime of embezzlement, then the defendant would be responsible for the words, acts, and conduct of said Clauson done in pursuance of said conspiracy.

[1] Appellant, after urging numerous reasons for a reversal of the judgment, many of which we regard as well taken, finally insists that the same should not only be reversed, but rendered in its behalf, because the court erred in refusing to give a peremptory instruction in its favor, as requested; and likewise erred in refusing to grant it a new trial on the ground that the evidence was wholly insufficient, either to warrant the submission of the case to the jury, or to permit the judgment to stand. After a careful review and consideration of the facts in evidence, we are forced to the conclusion that appellant's contention in this respect is well taken. This is not a case involving a conflict of evidence, but is one which, taking all the evidence offered, suggests the question, Is there any evidence which will support the verdict upon either of the theories upon which the prosecution bases its right to recover?

[2] There is absolutely no evidence whatever showing or tending to show that appellant directly charged appellee with the offense of embezzlement; nor do we think that there was any evidence warranting the court in submitting the issue as to whether he had charged that he was guilty of embezzlement by innuendo. It is true that appellant, through its general auditor, O'Connell, insisted that appellee should make good this shortage; and stated that, in the event he failed to do so, appellant would demand that the bonding company should make it good, and likewise stated that appellee had not accounted for but $1 of the money, and asked why he could

not show where it went, but in this same connection he disclaimed any intention to charge appellee with the theft or embezzlement of the money. On the contrary, he stated that the latter had a good record with the company, and expressed a belief in his honesty, basing his contention that appellee should make good the shortage alone on the ground that he had been negligent in failing to safeguard the office of the company, and in failing to promptly report the loss. No deduction, we think, can be drawn from what occurred at this interview between O'Connell and appellee at Dallas upon which this charge can be sustained when all the circumstances in evidence are considered. See Galveston Tribune v. Guisti, 134 S. W. 239.

Nor is there any evidence whatever tending to establish a conspiracy between appellant and Clauson, the agent of the bonding company, for the purpose either of extorting money from appellee or charging him with the offense of embezzlement, or any other crime. No letters or communications, such as were charged in the petition, were offered in evidence to support this theory of the case; nor was there any declaration whatever made by appellant tending to support this view. It is true that Clauson, the agent of the bonding company, had directly charged appellee with the offense of embezzlement; but these statements of his were made in the absence of any agent of appellant, and were not acquiesced in nor in any sense adopted, so far as the evidence discloses, by appellant or any of its agents, and were objected to when offered for the reasons above stated. There is a total dearth of evidence going to show any conspiracy between Clauson and appellant.

[3] The acts and declarations of Clauson, in the absence of prima facie proof of the conspiracy between him and the agent of appellant, were not admissible in evidence against appellant, and were on this ground objected to when offered. It is not necessary to cite authorities to support the proposition that, where there is no evidence to sustain a judgment for the plaintiff, it is the duty of the court to give a peremptory instruction in behalf of the defendant.

[4] It is also true that whenever on the trial the evidence is such, as in the instant case, as to require the district judge to instruct a verdict in behalf of the defendant, and he has failed so to do, then it becomes the duty of this court by virtue of article 1027, R. S., to reverse and render the judgment in favor of the party entitled thereto. See H. & T. C. Ry. Co. v. Strycharski, 92 Tex. 1, 37 S. W. 415; Stevens v. Masterson's Heirs, 90 Tex. 417, 39 S. W. 295.

Believing that the evidence wholly fails to sustain either issue presented in the petition, and feeling that the trial court erred in refusing to direct a verdict in behalf of appellant, as requested, it becomes our duty to reverse and render the judgment in its behalf, which is accordingly done.

Reversed and rendered.