REED v. HUNTER. (No. 322.)

(Court of Civil Appeals of Texas. Beaumont. Feb. 14, 1918.)

TRIAL �köö329 — VERDICT — DETERMINING ISSUES.

The issue drawn by the pleadings and evidence being, virtually, which party was right as regards the terms of the contract, and it being impossible for both to have verdict, one finding for defendant was a finding against plaintiff as effective as an express finding, the charge, though not really submitting the case on special issues, putting the issue in a double form.

Appeal from Falls County Court; F. S. Heffner, Judge.

Action by R. A. Reed against C. T. Hunter. Judgment for defendant, and plaintiff appeals. Affirmed.

Spivey, Bartlett & Carter, of Marlin, for appellant. E. W. Bounds, of Marlin, for appellee.

KING, J. This appeal is perfected from a judgment in favor of appellee in the county court of Falls county, Tex. For cause of action in the trial court appellant alleged that in 1915 he and appellee contracted and agreed that he should purchase a certain number of hogs, and that appellee should care for and fatten said hogs for market, and that on the 1st of December, 1915, appellant should sell said hogs on the open market, and that he should reimburse himself out of the proceeds of the sale for the purchase price, with interest, to the time of sale, and that appellant should pay to appellee one-half of the net profits from the sale of the hogs, and that in compliance with said contract he purchased and became the owner of 43 hogs, which hogs were situated, at the time of filing suit, on appellee's farm, and the market value of the hogs at that time was $6 each, and the increase,

being 12 pigs, of the market value of $1 each. Appellant further alleged that the appellee, who was then in possession, refused to carry out the contract, and refused to permit the plaintiff to sell the hogs. Appellant further alleged that in the event it should be held that he did not have the title to said hogs and pigs, and that by reason of the contract he had a lien on said hogs and pigs, to secure the repayment to him of the purchase money, he says that he furnished $286.15 in the purchase of the hogs, and that the repayment of said sum was due, and that appellee refused to permit him to take possession of the hogs and the pigs and subject the same to the payment of his personal money demand. He prayed that he have judgment for title and possession of 43 head of hogs and 12 pigs, and, in the alternative, that he have judgment foreclosing his lien on said hogs and pigs for the purpose of satisfying the purchase money of said hogs in said sum of $286.15, with interest.

Appellee answered by general exception and general denial, and specially pleaded, by way of reconvention, that on October 1, 1915, he and appellant entered into an agreement by which appellant agreed to furnish 83 head of cattle and 100 head of hogs, and that he had agreed to furnish such feed and pasture for same as his fields then contained, and to keep, pasture, water, and care for said cattle and hogs for a period of about 30 days, when said cattle and hogs were to be sold, and appellee allowed one-half of all gains in the weight of said cattle, at seven cents per pound for the steers and five cents per pound for cows; that said cattle were to be weighed when they went into the field, and weighed when they came out, and the net gains were to be divided equally between them and appellant; that the hogs were to be sold on the open local market, and the net gains on said hogs and their increase, after deducting the amount paid for said hogs, were to be divided equally between him and appellant; that appellant placed said 83 head of cattle, 47 head of which were steers, 36 head cows and bulls rated as cows, in said pasture, and also placed 43 head of hogs therein; that he carried out his part of the agreement, gave special care and attention to the cattle and hogs, and allowed them to graze and feed upon the pasture, which consisted of several hundred acres of fine Johnson grass, green peas, ungathered ear corn on the stalk, and other grasses; that the cattle remained in said fields until the 16th day of November, 1915, and gained in weight at least 200 pounds per head, and that the hogs remained in said pasture until about December 2, 1915, and gained in weight and value to the extent of not less than 150 pounds, or 50 pounds per head, at 7 cents per pound reasonable market value thereof; that the appellant violated his part of said agreement, and failed to purchase and place in said

field the 100 head of hogs as he had agreed to do, and thereby deprived appellee of the profits on the additional 57 head, which would have been equally as great as that on the 43 head which he did place in the pasture; that the additional 57 head of hogs could and would have been cared for with the amount of feed in said field, without additional trouble or cost to appellee, and would have netted an additional $75. He alleges that appellant further breached his contract with him in that on about the 16th of November, 1915, appellant broke and entered appellee's field and pasture, and took said 83 head of cattle therefrom, and failed to weigh the same, and converted appellee's part thereof to appellant's own use, and had failed and refused to account to appellee for his share in the increased weight of the cattle; that appellant further breached his contract with appellee in that, by a false affidavit made by appellant, he sued out a writ of sequestration, and caused the same to be levied on the 43 head of hogs, and caused the same to be taken out of the pasture and field and off of said feed, and refused to pay appellee his part of the increase in the value of said hogs or the value of the pasture, feed, care, and attention, but sold same and converted the proceeds to his own use and benefit; that had said cattle been weighed when taken out of the pasture, in accordance with their agreement, they would have shown a net gain of 150 pounds per head, and that his part thereof would have amounted to the sum of $250; that had said hogs been sold, and the highest market price obtained, at the increased net gains in weight and value, they would have brought $150, and that he was entitled to one-half of this sum; that had the additional 57 hogs been placed in the pasture they would have made equal gains, and defendant's part of said gain would have amounted to the sum of $75; that he had been damaged in the sum of $400 by breach of the contract on the part of appellant, for which he prayed for judgment over and against the plaintiff.

In answer, by supplemental petition, to appellee's original answer, appellant pleaded that he and appellee did make and enter into a contract, but that he did not agree to furnish 100 head of hogs, but only 43 head, which he did; that appellee was not to be allowed half the gain in weight of the said cattle at the rates per pound stated in said answer, but that it was understood and agreed that said cattle were to be weighed into the pasture at those prices, and that upon taking said cattle out of the pasture for sale appellant was first to reserve out of the proceeds money sufficient to reimburse himself for said cattle at said weights and prices, and the net proceeds of the sale, in excess of such money as was required to reimburse appellant, was to be equally divided between him and appellee; that there was no agreement that the cattle should be weigh-

ed out of the pasture; that it was contemplated and understood by the parties that they expected said cattle to fatten in said pasture and become fat for market, and that they would be put on the market and sold, and their selling weights would govern; that there was no agreement that said hogs would be sold on the open local market, but it was contemplated, agreed, and understood that said hogs were to fatten in said pasture, and would be sold on the market, and the net amount received for them, over and above the price at which they were put in said pasture, would be divided equally between him and appellee; that it was understood that appellant should do the marketing and selling of all of said stock; that, in pursuance to said agreement, he placed in said pasture 47 head of cattle, of the aggregate weight of 48,260 pounds, at the agreed price of 7 cents per pound, or $3,378.20, and 36 head of cattle, of the aggregate weight of 28,140 pounds, at the agreed price of 5 cents per pound, or $1,407, both aggregating in value, at the agreed price, $4,785.20, for which he was to be reimbursed before there could be any profit; that on November 18, 1915, after said cattle had been in said pasture for some time, it became apparent that they were not gaining in weight or making any profit for any one, and that, the time having elapsed which was in the contemplation of the parties that they should remain therein, the plaintiff took said cattle out of said pasture, without objection on the part of appellee, and at once shipped 41 head to the Ft. Worth market, being the pick of the cattle, which weighed in the aggregate 48,420 pounds, and that he received therefor the net sum of $2,754.07, which was a reasonable price, and the best price he was able to obtain for them; that the balance of said cattle were not then in condition for market or sale, and were not fattening in said pasture, and that plaintiff was compelled to hold and care for them. Appellant then, by his pleadings, showed the manner of the disposition of the rest of the cattle in detail, and alleged a loss of $588.90 on the sale of the cattle; that he sold the hogs at a net profit of $69.45, which, deducted from the amount lost on the cattle, left a total loss of $519.45; that during the negotiations leading up to the contract, and which entered into same, appellee represented to him that said pasture was ample to care for, and fatten said 83 head of cattle and 43 head of hogs, and that he relied upon said representation, and that said cattle and hogs were put into said pasture on account of such representation, and for the purpose of being fattened for the market; that as a matter of fact said pasture was not ample or sufficient to fatten said cattle and hogs, but that, if it was, appellee, within a short time after the stock was placed therein, and without his knowledge and consent, gathered and caused to be

gathered and carried from said pasture a large amount of peas, and cut and caused to be cut and hauled away a large amount of Johnson grass and other grasses from said pasture, and failed and refused to give said cattle and hogs free access to said pasture, but curtailed its use by grazing stock belonging to appellee on portions thereof ahead of plaintiff's cattle and hogs, and thereby materially reduced the opportunity for plaintiff's cattle and hogs to fatten, and did cause them not to fatten, by reason of which plaintiff sustained the loss of said $519.45.

A trial was had by jury, who rendered the following verdict:

"We, the jury, find for defendant for cattle the sum of $247.00 as paragraph two and three. We also find for the defendant the sum of $75.00 for hogs as per paragraph four and five."

Upon this verdict it was decreed by the court that appellant take nothing by his claim for damages against appellee, and that appellee recover over and against appellant on appellee's cross-action, the sum of $322 damages.

The court, after charging the jury with reference to the respective contentions of the parties, gave them the following charge:

"If you believe from a preponderance of the evidence that it was agreed and contemplated by and between the plaintiff and defendant that the cattle placed · in the pasture were to be weighed out from the pasture at the end of the feeding period, and that said cattle made a gain in weight, and that the steers placed therein were to be settled for on such gain in weight on the basis of 7 cents per pound of gain over their weight when put in the pasture, and that cows and bulls were to be settled for on such gain in weight on the basis of 5 cents per pound of gain over their weight when put in the pasture, then you will find for the defendant on his cross-action for such gain in weight, if any, on the basis of 3½ cents per pound for gain in weight of steers, and 2½ cents per pound for gain in weight of cows and bulls. The burden of proof upon this issue is upon the defendant.

"(3) On the other hand, if you fail to find from a preponderance of the evidence in favor of the defendant, Hunter, under paragraph next above, then you will return a verdict against the defendant on his cross-action as to the issue in this and the next above paragraph.

"(4) If you believe from a preponderance of the evidence that the plaintiff agreed to furnish 100 head of hogs for defendant's pasture and failed to furnish 57 head thereof, and that as a consequence of such agreement and failure, if any, the defendant sustained a loss, then upon this issue you will find for the defendant such amount, if any, as you believe from the evidence he has sustained. The burden of proof upon this issue is upon the defendant.

"(5) On the other hand, if you fail to find from a preponderance of the evidence that plaintiff agreed to furnish 57 additional hogs to the ones placed in the pasture, or that, had he done so, the defendant would not have made any profit upon them, then you will return a verdict against the defendant upon this issue.

"(6) If you believe from a preponderance of the evidence that the defendant represented to plaintiff that his pasture was ample and sufficient to fatten said cattle, and that the plaintiff relied upon said representation, and that the same proved untrue or incorrect, or if you believe from a preponderance of the evidence that the defendant either gathered and carried away or caused to be lost, or permitted to be gathered and carried away, a material portion of the foodstuff constituting such pasture, or caused or permitted his own stock to graze thereon, and that such acts, if any, materially reduced the value of said pasture and caused plaintiff's cattle or hogs not to gain in weight, then as to such loss as was thereby sustained, if any, you will return a verdict in favor of plaintiff."

The first and only assignment of error is to the effect that no judgment can be rendered in this case, in that the jury failed to follow the instructions of the court, and pass upon and return a verdict upon the issue submitted to them in the sixth paragraph of the charge.

We hold that the verdict returned by the jury, in response to the issues submitted to them by the court in paragraphs 2, 3, 4, and 5 of the court's charge, is so at variance with appellant's claim for damages, under his contention as to the terms of the contract, that a finding for appellee under said issues is, in effect, a finding against appellant on such claim as effectually as if they had, in fact, found expressly against appellant, under paragraph 6 of the charge. The contract between the parties cannot bear the construction given it by both parties, and it would be impossible for the jury to have returned a verdict in favor of both parties. The issues drawn by the pleadings and the evidence introduced by the respective sides resolved the issues into this : Was the appellant right or was the appellee right?

It is true that the court in his charge made an effort to divide the issue into two parts by submitting it to the jury, like the old story of the white man and the Indian trying to divide their game, when the white man said to the Indian: "I will take the turkey and you take the buzzard, or you take the buzzard and I will take the turkey." No complaint is made as to the charge. The charge of the court, in effect, told the jury that if they found from the evidence that the contract was in the manner pleaded by appellee that they would find for appellee, but that if it was not as pleaded by appellee they would find for appellant. The case was not really submitted on special issues, notwithstanding the paragraphing of the court's charge. We recognize the rule that the verdict of the jury should determine all the matters in issue submitted to them by the court, but are of opinion that this verdict does so. Dewitt v. Berger Mfg. Co., 81 S. W. 335; Liljeblad v. Sasse & Powell, 49 Tex. Civ. App. 512, 108 S. W. 787; Galveston Tribune v. Guisti, 134 S. W. 243; Pritchard Rice Milling Co. v. Jones, 140 S. W. 817; Lewis v. Smith, 43 S. W. 294; Bemus v. Donigan, 18 Tex. Civ. App. 125, 43 S. W. 1052.

. The judgment is therefore affirmed.