### GEORGE H. WALKER v. SAN ANTONIO LIGHT PUBLISHING COMPANY ET AL.

Decided October 15, 1902.

**Libel—Exposure to Ridicule—Financial Injury.**

Under the statute defining civil libel (Act March 26, 1901, Laws Twenty-seventh Legislature, page 30), a false publication tending to injure plaintiff's reputation and exposing him to ridicule is actionable though unaccompanied with financial injury.

Appeal from the District Court of Travis County. Tried below before Hon. F. G. Morris.

*Fiset & Miller,* for appellant.

*W. W. Walling,* for appellees.

KEY, ASSOCIATE JUSTICE.—This is a suit to recover damages for the publication of an alleged libel. The District Court sustained a general demurrer to the plaintiff's petition, and that ruling is assigned as error. Omitting certain formal averments, the petition reads as follows:

"That plaintiff is a reputable, law-abiding citizen of the city of Austin, Travis County, Texas, and has been such for many years, and he has always behaved and conducted himself in a manner to merit the approval of the citizens of said county, and has always been esteemed and respected by them and by the citizens of other counties in Texas where he was in anywise known, until the publication of the libelous article hereinafter set out; that he has deservedly obtained the respect and good opinion of all such citizens.

"That, nevertheless, the defendants, well knowing the premises, but greatly envying the happy state and condition of said plaintiff, and contriving and wickedly and maliciously intending to injure the said plaintiff in his good name, fame, credit, respectability, and reputation, and to bring him into public scandal, infamy, ridicule, contempt, and disgrace with and among all his neighbors and other good and worthy citi-

zens, and to vex, harass, oppress, impoverish, and wholly ruin plaintiff, therefore, to wit, on the 26th day of July, 1901, falsely, wickedly and maliciously did compose, print, and publish, and cause and procure to be composed, printed, and published of and concerning the plaintiff a certain false, scandalous, malicious, and defamatory libel, containing therein the false, scandalous, malicious, defamatory, and libelous matter following, of and concerning the said plaintiff, that is to say:

"Got Hot Lashes—Walker (meaning plaintiff), Manager, Caned by Actress on Broadway—Texas Joke the Cause.—His (meaning plaintiff's) Son and Several Girls Had Sent Sarcastic Presents to Miss Barton.—According to the New York Telegraph, Georgie Walker (meaning plaintiff), the whilom manager of the San Antonio Opera-house and present manager of the Hancock at Austin, ran up against an actress with nerve up in New York, the eastern metropolis, and got a caning for one of his Texas jokes. The girl who did it was here last season, and also visited Austin, where Mr. Walker (meaning plaintiff) made her his enemy. The Telegraph says: The finest bit of sprinting which Broadway folk have seen in months convulsed those who were out at 2 o'clock yesterday morning. That the wrong man was whipped by an athletic young woman does not lessen the pain in the welts she left on the neck and shoulders of George Walker (meaning plaintiff), the Texas theatrical manager. He (meaning plaintiff) was tossing on a bed of pain at the Vendome yesterday, but hopes to be out to-day, none the worse for his (meaning plaintiff) adventure except as to his (meaning plaintiff's) pride. The opening chapter of Mr. Walker's (meaning plaintiff) misadventure took place in Austin, Texas, last Christmas. Traveling in Texas at that time was "The Telephone Girl" Company, of which J. J. Rosenthal is the manager. It is said that one of the girls of the company, Inez Barton, had gained the ill will of several of his sisters and they resolved on a mean trick to humiliate her. Lured the Young Hopeful. They coaxed George Walker's (meaning plaintiff's) son to go with them to make Christmas purchases. Among other things they bought a sponge, a tin basin, a towel and a bar of soap, and sent them to Miss Barton. It is on record that the girl sobbed for hours, and then cunningly resolved to learn the names of her insulters. The paper in which the articles were wrapped gave her the first clew. At the store she learned that Mr. Walker (meaning plaintiff's son) was the young man that purchased them. Fortunately for the real culprit and unfortunately for the elder Walker (meaning plaintiff), the troupe had to leave town before Miss Barton could obtain revenge. But she made up her mind to play even, if it took a dozen years. She recognized Mr. Walker (meaning plaintiff) yesterday morning on the street. Then she borrowed the little cane carried by her escort, and with a dash was at him (meaning plaintiff), switching with all her strength. Walker (meaning plaintiff) simply had to run. There was nothing else for him (meaning plaintiff) to do, though he (meaning plaintiff) managed to say: "Run along now little girl;

you've had fun enough. Ouch! What are you clubbing me for? Ouch! I don't know you." "O no! you don't know me," said Miss Barton. "All the more reason for whipping you, you big brute. You will send sarcastic Christmas present to a real lady, will you?" Walker (meaning plaintiff) finally got away, and the girl, apparently satisfied with herself and the night's work, again took the arm of her escort and moved up Broadway. Walker's (meaning plaintiff's) son heard of his father's (meaning plaintiff's) said experience, and put the first ray of light on the subject. He (meaning plaintiff's son) recalled the matter of the Christmas present to the girl in Austin, and the laughs the others in the company had at her expense. "It must have been that Barton girl," said young Walker (meaning plaintiff's son), consolingly to his father (meaning plaintiff). "Just wait till I get back to Texas. I'll club that grocer for not telling her that I was only along with the other girls when they bought those things to send.'"

"That by means of the committing of said several grievances by defendants as aforesaid, the plaintiff has been and was greatly injured in his good name, fame, respectability, credit, and reputation, and brought into public scandal, infamy, ridicule, contempt, and disgrace with and amongst all of his neighbors, friends and acquaintances and other good and worthy citizens, in so much that divers of those friends, neighbors and citizens had, on account of the committing of said several grievances by said defendants as aforesaid, from thence hitherto wholly refused and still did refuse to have any transactions, acquaintance, or discourse with said plaintiff, as they were before used and accustomed to have done and otherwise would have done, or to hold or permit any intercourse or society with him.

"And plaintiff further says that the aforesaid publication was a pure fabrication, and without any basis whatever in fact, and was published for the purpose and with the intention on the part of the defendants of making fun through the public press of the plaintiff and of holding him up to public contempt and ridicule, and to make him the butt of fun and ridicule and a laughing-stock among those who knew him, and other persons who might read the article; that plaintiff was for many years the manager of an opera-house in San Antonio, Texas, and for the last five years or more has been, and is now, manager of an opera-house in the city of Austin, and in his business becomes acquainted with actors and actresses, and that the natural and reasonable effect of the said article was to make those who read it, and those who read it did get from it that impression, that the plaintiff had been publicly caned on the streets of New York and had been disgraced and humiliated on the public streets by the actress named in the article, and had been greatly humiliated and caused to act in an absurd and ridiculous manner, and that it was intended by the defendants, and had the effect intended, of making plaintiff an object of mirth, contempt, and scorn with all those who had read the aforesaid publication, and by reason of the publication, plaintiff's friends and acquaintances, to wit,

Harvey Harrell and others, and other good and worthy citizens, have looked upon plaintiff as an object of derision and pity and have refused to associate with him as they formerly did, and have been induced to have an ill opinion of him, and he has on that account lost the society of and the pleasure of associating with his former friends; and his feelings have been greatly injured, and he has thereby been subjected to great shame and mortification, and has been subjected to slights and rebuffs by those who were formerly very friendly with him and held him in high esteem, and has been shunned and avoided by them, and on that account his comforts and enjoyments as a member of society and his social intercourse and pleasure have been greatly abridged and diminished, all of which has been the natural, direct and reasonable result of the aforesaid publication.

"And plaintiff further says that the defendants intended by said article to produce the impression, and the article was calculated to produce the impression, and did produce it in the minds of those who read it; and especially of the plaintiff's friends and acquaintances, that he was of a character and disposition to get into such a scrape as is related in said article, and was the kind of person likely to become involved in such a disgraceful escapade, and that his reputation and disposition were of a kind suited to such an adventure, and that he acted while he was being caned in an absurd, ridiculous, undignified, and pitiful manner, and was by the caning physically injured and mutilated and caused to undergo great pain and suffering thereby; and by reason of the premises he has suffered actual loss and damage in the sum of five thousand ($5000) dollars.

"And plaintiff further says that the defendants published and caused to be published the aforesaid article in the manner as aforesaid, of and concerning the plaintiff, for the purpose of injuring him, and with the malicious intent of making him absurd and ridiculous, and that they knew the article was wholly false, and they were actuated in the matter by actual malice and a disposition to inflict upon the plaintiff, without any reason and with knowledge of the falsity of the article, humiliation, mortification, and disgrace; and by reason of the premises, plaintiff has been further damaged in the sum of five thousand ($5000) dollars as punitory or exemplary damages."

*Opinion.*—The act of the Twenty-seventh Legislature defining civil libel was in force at the time of the publication complained of. Laws 27th Leg., p. 30. The statute referred to reads as follows:

"Section 1. A libel is a defamation expressed in printing or writing or by signs and pictures or drawings, tending to blacken the memory of the dead, or tending to injure the reputation of one who is alive, and thereby expose him to public hatred, contempt or ridicule, or financial injury, or to impeach the honesty, integrity or virtue or reputation of anyone, or to publish the natural defects of anyone, and thereby expose such person to public hatred, ridicule or financial injury.

"Sec. 2. In any action for libel, the defendant may give in evidence, if specially pleaded, in mitigation of exemplary or punitive damages, the circumstances and intentions under which the libelous publication was made, and any public apology, correction or retraction made and published by him of the libel complained of. The truth of the statement or statements in such publication shall be a defense to such action.

"Sec. 3. The publication of the following matters by any newspaper or periodical, as defined in section 1, shall be deemed privileged, and shall not be made the basis of any action for libel without proof of actual malice:

"1. A fair, true and impartial account of the proceedings in a court of justice, unless the court prohibits the publication of the same, when in the judgment of the court the ends of justice demand that the same should not be published, and the court so orders; or any other official proceedings authorized by law in the administration of the law.

"2. A fair, true and impartial account of all executive and legislative proceedings that are made a matter of record, including reports of legislative committees, and of any debate in the Legislature and in its committees.

"3. A fair, true and impartial account of pulpit meetings, organized and conducted for public purposes only.

"4. A reasonable and fair comment or criticism of the official acts of public officials and of other matters of public concern published for general information.

"Sec. 4. Nothing in this act shall be construed to amend or repeal any penal law on the subject of libel, nor to take away any existing defense to a civil action for libel, nor shall this act affect any suits now pending, or that may hereafter be brought upon a cause of action arising prior to the taking effect of this act.

"Sec. 5. The fact that there is now no law in this State defining libel and privileged publications creates an emergency and an imperative public necessity that the constitutional rule requiring bills to be read on three several days be suspended, and this act shall take effect and be in force from and after its passage, and it is so enacted."

We are of opinion that it was the manifest purpose of the Legislature, in enacting the statute quoted, to cover the entire subject of libel as applied to civil suits, regardless of what may have been the rules of the common law and decisions of the courts on the subject. It therefore becomes necessary to construe the statute and ascertain if the plaintiff's petition states a cause of action within its purview. While the statute is broader and includes other matters within the definition of libel, it in effect declares that any publication tending to injure the reputation of one who is alive, and thereby expose him to either public hatred, contempt or ridicule, or financial injury, is a libel. Of course, by the terms of the second section of the statute, the truth of such publication would be a valid defense; and when that issue is raised, unless the publication is false, it is not libelous.

Applying the rule which requires the averments in a pleading to be liberally construed as against a general exception, we hold that the petition in this cause shows that the publication complained of tended to injure the plaintiff's reputation and expose him to contempt and ridicule; and, such being the case, it comes within the statutory definition of libel. According to that definition, it was not necessary for the petition to disclose special damage. If it discloses a publication tending to injure the reputation of the plaintiff, by exposing him to public hatred, contempt, or ridicule, *or financial injury,* then it states a libel under the second clause of the first section of the statute. When the tendency of the publication is to injure reputation by exposure to public hatred, contempt or ridicule, it is not necessary that financial injury shall be shown, in order to render the publication libelous. The publication must tend to expose the plaintiff to one or more of the four conditions named in the statute—public hatred, contempt, or ridicule, or financial injury; but it is not necessary to show exposure to more than one of such conditions.

We are not prepared to hold that the alleged libelous publication did not tend to injure the reputation of plaintiff, by exposing him to contempt and ridicule as alleged in his petition; and we think it was the intention of the Legislature, especially in cases of doubt, to make that a question of fact to be decided like any other issue of fact in a civil suit.

As plaintiff's pleading must be tested by the statute quoted, which is now the law of this State on the subject of libel, it becomes unnecessary to consider whether at common law the petition is sufficient. And it follows from what has been said, that, as against a general demurrer, the petition states a cause of action within the purview of the statute, and the trial court erred in sustaining the general demurrer.

Judgment reversed and cause remanded.

*Reversed and remanded.*