McDAVID et al. v. HOUSTON CHRONICLE PRINTING CO.

(Court of Civil Appeals of Texas. Austin. Feb. 7, 1912. Rehearing Denied March 27, 1912.)

1. LIBEL AND SLANDER (§ 15*)—WORDS ACTIONABLE—STATUTES.

Under the statute defining libel as a defamation expressed in printing or writing, tending to injure the reputation of one living, and thereby expose him to public hatred, ridicule, or financial injury, special damage need not be shown, the statute having abolished the distinction which exists at common law between libel per se and other libels.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 1; Dec. Dig. § 15.*]

2. LIBEL AND SLANDER (§ 16*)—WORDS ACTIONABLE — STATUTE — "PUBLIC HATRED" — "HATRED."

A publication charging that plaintiff's daughter attempted to become the master of her household, and that this quality was inherited from plaintiff, who had her husband in abject subjection, was actionable under the statute defining libel as a defamation in writing tending to expose one to public hatred, public hatred being public or general dislike or antipathy, and "hatred" meaning to have little regard for or to despise, and the conduct attrib-

---

uted to plaintiff is such as to bring a woman into general disrepute and ridicule.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 1–9; Dec. Dig. § 16.*]

3. LIBEL AND SLANDER (§ 21*)—PERSONS DE-FAMED—CERTAINTY.

A newspaper account of a divorce proceeding contained matter derogatory to plaintiff in the divorce case, and stated that she derived her bad characteristics from her mother, and. while the report did not give the names of any of the parties, it described the occupation of the defendant in the divorce case, and made other statements which, to persons acquainted with the parties would identify the persons referred to. A second article on the same subject mentioned the name of plaintiff in the divorce suit. *Held*, that the mother of the plaintiff in the divorce suit was sufficiently referred to to support an action by her against the owner of the newspaper for libel.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 103; Dec. Dig. § 21.*]

4. LIBEL AND SLANDER (§ 97*)—PLEADING—PRIVILEGE—DEMURRER.

Under the statute authorizing a fair, true, and impartial account of the proceedings of courts of justice, unless the court prohibits the publication, but providing that such publication, though fair, true, and impartial, is not privileged, when maliciously made, a petition alleging the publication in a newspaper of a false and defamatory report of proceedings of a divorce case is not demurrable as showing a privileged publication where the petition alleges malice.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 234–236; Dec. Dig. § 97.*]

Appeal from District Court, Bastrop County; Ed. R. Sinks, Judge.

Action by Mrs. R. L. McDavid and husband against the Houston Chronicle Printing Company. From a judgment sustaining a demurrer to the petition, plaintiffs appeal. Reversed and remanded.

Mrs. R. L. McDavid and her husband, Doc McDavid, brought this suit against the Houston Chronicle Printing Company, a private corporation, for damages on account of an alleged libel. The defendant's answer embraced a general demurrer, several special exceptions, a general denial and a special plea, the contents of which need not be here stated. The trial court sustained a general demurrer to the plaintiffs' petition, and the latter have appealed and assign that ruling as error. Omitting certain formal parts, the petition reads as follows:

"(1) Plaintiffs reside in the county of Bastrop, state of Texas. The defendant is a private corporation, duly incorporated under and by virtue of the laws of the state of Texas, and has its principal office and place of business in Houston, Harris county, Texas, and Marcellus E. Foster, who resides in said county of Harris, is the president and general manager of said defendant company, and C. B. Gillespie, who also resides in said county of Harris, is its secretary, upon either of whom service may be had for the purposes of this suit.

"(2) Plaintiffs allege that they are hus-band and wife, and that they are aged, respectively, 56 and 50 years, and that they have resided in Bastrop county, state aforesaid, during the whole of their lives, and until this date; that they have been intermarried about 32 years, during which time they have resided as aforesaid in said county of Bastrop, Tex., and have reared a family of six children, of which all but two are adults, and the said children of plaintiffs, husband and wife, consists of three boys and three girls, all of whom are and have been married except two boys, who still reside with plaintiff at their home in Smithville, Bastrop county, Tex., and are aged 14 and 15 years, respectively; that Mrs. Leora Alice Allison, formerly Mrs. Chas. H. Fischer, who resides in Houston, Harris county, Tex., is their daughter; that on or about the 5th day of October, 1910, the said Mrs. Leora Alice Allison was the wife of Chas. H. Fischer, and that she, the said Mrs. Allison, and her said husband, resided in Houston, Harris county, Tex., that at said last-named date the said Mrs. Leora Alice Allison, then Mrs. Chas. H. Fischer, was not residing with her said husband, but had filed suit for a divorce in the name of Leora Alice Fischer against the said Chas. H. Fischer, her husband, at said date, in the district court of Harris county, Tex., for the Fifty-Fifth judicial district, and was then prosecuting her said suit to final judgment; that plaintiffs, husband and wife, were in no wise parties to said suit, and had no interest in the same any further than the natural interest of father and mother for the welfare of the said Mrs. Leora Alice Allison, their said child; that they had never during the married life of the said Chas. H. Fischer and their said daughter in any manner whatsoever intermeddled or interfered with their domestic affairs, or sought, in any manner, whatsoever, to influence the policies of the said Chas. H. Fischer and wife in the conduct of their community affairs, and really knew but little of the said husband of their said daughter.

"(3) Plaintiffs further allege that they are now, and from their birth hitherto have been, good, pious, honest, and virtuous persons, and have always during all of their time aforesaid behaved, conducted, and governed themselves as such, and that, until the time of the writing, publishing, and circulation of the false, scandalous, and malicious libel hereinafter mentioned, have always been and were reputed and esteemed among all of their friends and neighbors, and among divers other good and worthy citizens of this state, to be persons of good name, fame, credit, and reputation, and they the said plaintiffs, husband and wife, in their marital and mutual relations, have always conducted themselves and their community and domestic affairs in such a manner as to mer-

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

it the confidence, esteem, and respect of their neighbors, and of all right-thinking people of this state; that each of them (plaintiffs) have always since their marriage aforesaid pursued, each towards the other, a course of conduct and behavior consistent with their said marital and conjugal relations, and the highest purposes thereof; that they have always since their said marriage conducted themselves toward one another with decency and propriety, kindness and love, respect and confidence, at the same time having due regard for each other's dignity and self-esteem, and each of them, husband and wife, have always understood and appreciated their respective duties under their marital contract and relations, and have always comported themselves in accordance therewith, to the end that they should continue to command the respect, esteem, love, confidence, and good will and admiration of each other and of their immediate friends and neighbors, and of all good citizens of this state, with whom they might associate, or who might take occasion to inquire of their standing and relations; that the husband Doc McDavid, has always been the bread winner in his said family, and as such has always performed any and all duties incumbent upon him as a husband and father, without the slightest interference on the part of the said R. L. McDavid, his wife, always having due regard, however, for any advice, counsel, or suggestion she might see fit to volunteer; that he is a school teacher by occupation and profession, and as such has always been able to provide for his said wife and family in a manner consistent with his own and their station in life; that for the past seven or eight years the wife, R. L. McDavid, has been an invalid, but she has nevertheless, always maintained her dignity and self-respect as a woman, and performed all and every duty incumbent upon her as a wife and in connection with her household affairs, and has never sought to assume control or dominion of any nature whatsoever over her husband or his affairs, but, on the contrary, has always conducted herself with due regard, love, admiration, and respect for her said husband, and as his helpmate and companion in life, and they, the said plaintiffs, and each of them, have always obeyed the command of love, esteem, and honor each the other, and their married life has been mutually happy, dignified, and felicitous, nor have they or either of them up to the time of the writing, publishing, and circulation of the false, scandalous, and malicious libel hereinafter set out been guilty, or suspected to have been guilty, of pursuing towards each other any course of conduct except such as would necessarily have commanded from each other and their neighbors and friends the highest esteem, confidence, respect, and admiration, nor has the said Mrs. R. L. McDavid, wife of Doc McDavid, ever been a 'manly' woman, or sought in any manner to conquer her husband in a desire to 'rule or ruin,' nor has she ever been guilty of or suspected to have been guilty of any act but such as would be the act of a modest, virtuous, and refined lady, but, on the contrary, she has always been, and such has been her reputation among those who know her best, a modest, virtuous, and refined lady, and a respectful, loving and dutiful wife, and she has always and upon all occasions conducted herself as such; that up to the time of the writing, publishing, and circulation of the said false, defamatory, and malicious libel hereinafter mentioned she has always borne the reputation, name, credit, and fame of being a model wife, and a virtuous, refined, modest, dignified, and pious lady.

"Plaintiffs allege that, before the writing, publishing, and circulation of the said false, scandalous, and malicious libel hereinafter mentioned, they were used to live quietly and happily together, and to enjoy great happiness and comfort in their married state; that the defendant, acting by and through its servants, employés and agents, well knowing the premises, but contriving and maliciously intending. to prejudice, degrade, and injure the plaintiff and each of them, in their good name, fame, credit, and reputation, and to hold up and expose the said plaintiffs and their family to public infamy, hatred, contempt, and ridicule, and to impeach the honesty, integrity, virtue, and reputation and to destroy the domestic peace and happiness of the said plaintiff and their family, did, on or about the 5th day of October, A. D. 1910, by and through its agents, servants, and employés, and through the medium of the Houston Chronicle & Herald, a daily paper owned, published, and circulated by the defendant, falsely, scandalously, and maliciously write, publish, and circulate and cause and procure to be written, published, and circulated, a certain false, scandalous, and malicious libel of and concerning the said plaintiffs and each of them, containing therein the false, scandalous, defamatory, and opprobrious matter following of and concerning the said plaintiffs, their family, and each of them, viz.:

" 'Husband makes a poetic plea in answer to divorce suit' (meaning thereby that Chas. H. Fischer, the husband of the daughter of plaintiffs herein—i. e., Mrs. Leora Alice Allison—makes poetic plea in answer to divorce suit of the said Mrs. Allison, then Leora Alice Fischer).

" 'He likes his job as "Lone sentinel between the wife and child of a former marriage and a rugged old world." Lunch money and red kimona caused trouble.

" 'Just what happens when a wife wants to be a "manly woman" is so pathetically set forth in an answer to a petition that was filed in the local courts on Wednesday, that it is perhaps worth the space to give

the answer of the defendant husband in full. The document is incidentally conclusive proof that all legal instruments are not full and dry, but that some of them are overwhelming in eloquence or something.

" 'The situation is that of a city fireman (by city fireman meaning Chas. H. Fischer, the defendant in a divorce suit filed by his then wife Mrs. Fischer, in the local courts of Harris county, Texas) who marries a divorced woman (meaning Mrs. Leora Alice Fischer, now Allison, the daughter of plaintiff) with several children and a mother (by mother meaning plaintiff, R. L. McDavid) and who is trying to prevent the securing of a second divorce by his wife. The pathos of this appeal, which is of record, would it seems stir up the most unsympathetic heart. Omitting the names (thereby meaning that the names of Chas. H. Fischer, his wife, Leora Alice Fischer, now Allison, and the name of plaintiff, Mrs. R. L. McDavid, are omitted) formal opening and caption, the answer (meaning the answer of Chas. H. Fischer, defendant in said divorce suit) is verbatim as follows:

" ' "Defendant (meaning the defendant in said divorce suit, Chas. H. Fischer) avers the fact to be that the sole and only difference between he and plaintiff (meaning plaintiff in said divorce suit) is based on the solitary grounds of his refusal to deliver to her his earnings, as was suggested by her, not by request, but in the language of the Medes and Persians, 'Thou shalt,' which defendant has failed and refused to do, and will, throughout the years that may be allotted to him. Defendant (meaning the defendant in said divorce suit Chas. H. Fischer) avers that this is not the first shipwreck suffered by plaintiff (meaning plaintiff in said divorce suit, Mrs. Fischer, now Allison), but ere this she set sail on a calm and placid matrimonial sea, destined for a haven of rest, safe from adversity and want, but soon there arose a tumultuous sea, the storm broke in a tempestuous rage, when finally an anchor was cast in the 61st Judicial District of Texas, in which cause plaintiff (meaning plaintiff in said divorce suit, Mrs. Fischer, now Allison) obtained a divorce from her husband (meaning thereby that the plaintiff in said divorce suit, Mrs. Allison, then Fischer, obtained a divorce in said court from a former husband) upon whom service was had at Jefferson, Tennessee, to which dear old state it seems 'the terror-stricken husband had fled, after which she married this defendant (meaning Chas. H. Fischer).' "

" 'Admits His Wife is Pretty.

" ' "Defendant (meaning the defendant in said divorce suit, Chas. H. Fischer) avers that during their married life he has been kind and attentive to her (meaning the plaintiff in said divorce suit, Mrs. Chas. H. Fischer, now Allison), inspired by that love expressed by the German poet:

" ' " 'I know not, I care not, if guilt is in thy heart;
I would know I love thee, whatever thou art,'

and to augment his affections, plaintiff avers the fact to be and stands ready to verify same, if the plaintiff will appear in court, that she is pretty; therefore defendant has been and will continue to be an over indulgent husband as in days gone by, and will continue to submit to almost any indignities and surrender almost any right, except the sole right, poor privilege that it is, of retaining a little money to buy bread and lunch while on duty, which alone he has reserved unto himself (meaning thereby to impute to and charge the said plaintiff in said divorce suit, Mrs. Fischer, and also, as will be apparent from the context and connection of the entire article and the references therein, to her mother, Mrs. R. L. McDavid, plaintiff in this suit, guilty of some wrongful act, crime or characteristic, and such as would be unbecoming and unnatural in a refined, virtuous and modest lady; and meaning thereby, inasmuch as the said libelous matter charges in a subsequent article that the disposition of the said Mrs. Fischer, now Allison, was inherited from her mother, one of the plaintiffs herein, that plaintiff Mrs. R. L. McDavid, was guilty of some immodest or wrongful act, or of some vice, crime and conduct; and further, that in her relations with her husband, Doc McDavid, she was manly, dictatorial, overbearing and contentious, and was unappreciative and oblivious of his attentions and kindness and indulgence to and of her).

" ' "Defendant (meaning however the defendant in said divorce suit) avers that he at no time has ever failed or refused to support plaintiff—that he could not do so if he would, that he would not do so if he could—but even now, since she has wilfully abandoned him, told him to leave and never return that he has provided for her and will continue to, so long as she will permit him to do so.

" ' "Further answering herein, if required to further plea, defendant says that he and plaintiff were married on or about September 5th, 1909, that soon thereafter she left him and went to St. Louis at a cost to him of about one hundred dollars; when finally he prevailed upon her to return to him, where she resided for a while, until another desire to rid herself of him seized and possessed her, and again she left him through no fault of his. Defendant says that during the time in which he and plaintiff (meaning the defendant and plaintiff in said divorce suit) have lived together as man and wife, as best he could, he has contributed to her support and happiness as far as his limited means and income would permit, and if she

has become unhappy or dissatisfied it has been through no fault of his. Defendant says that he has no community property other than the household furniture at his premises, all of which is in the possession, control and management of plaintiff."

#### "'A Lone Sentinel.

"' "He (meaning the defendant in said divorce suit) avers that prior to his marriage to the plaintiff he acquired a lot, the number and value of which he does not know, which is located in Conroe, Montgomery county, Texas; that since his said marriage he (meaning defendant in said divorce suit) has stood bravely, a lone sentinel between the wife and child of a former marriage on the one side and a rugged old world on the other, battling for bread; that he is employed by the city of Houston as a fireman, and is captain of the station, which pays him $90 per month, assuming that no misfortune overtakes him, and that he develops no ailments that human flesh is heir to; if no dark shadow comes athwart his path and no misfortune of any kind, character, shape, form, fashion or description overtakes him; that if he chances to get his fires mixed or miss a number, or any of his men's deportment is not what it should be, for which he is responsible, he is compelled to lose time which deteriorates from his monthly allowance, and, though strange it may seem to plaintiff, defendant avers the fact to be that sometimes he is given time and compelled to lose time for which he receives no compensation."

#### "The Interrupted Voyage.

"' "Defendant (meaning defendant in said divorce suit) avers that near the early morn of youth he started out with plaintiff (meaning the plaintiff in said divorce suit) down life's road, hoping and believing that the way would be traveled, and the journey ended and the vale beneath reached in safety, at which place they would together sleep their last long sleep, awaiting the final blast from the oft spoken trumpet of Gabriel, the Archangel, but alas, and to relate, but a part of the way had been traveled when plaintiff (meaning the plaintiff in said divorce suit, Mrs. Fischer, now Allison) conceived the idea of defeating and repealing that provision of the statute of this state which gives and grants unto the husband, the bread earner, the right to manage the property rights, she announced her purpose and intentions of having her husband deliver unto her the earnings he might possess at the end of the month, which he refused to do, but insisted that he be permitted, as he has always done since their said marriage, to provide for her every necessity and what luxury a brain not diseased or a reason not dethroned could and would pray for, and after so doing, if any of his earnings were left, that he be permitted to invest same in order that he might, in the event of a mishap or accident imminent to the dangerous employment which he pursued, have something to place them above want and without the domain of charity to all of which the plaintiff (meaning the plaintiff in said divorce suit) steadfastly objected and refused to accede to, and announced her determination, purpose and intention of having him work and turn over what, if any, earnings he might possess after the payment of the expenses, or that he could go his way and she would go hers, adding that she would rather be a waif on the streets than be denied the rights she insisted upon (meaning by said last two paragraphs of said alleged libelous matter to charge said Mrs. Leora Alice Allison, daughter of plaintiff, and by comparison, as will hereinafter appear to charge the plaintiff in this cause, Mrs. R. L. McDavid, with an unappreciative disposition and such a nature as is unbecoming to a lady of virtue, modesty and refinement, and meaning further to charge that the said plaintiff in said divorce suit and her said mother are contentious, quarrelsome, violent, unkind and unappreciative in their marital relations and that they are selfish, mean and overbearing, in their said relations)."

#### "'Wife is Manly Woman.

"' "Defendant (meaning the said defendant in said divorce suit, Chas. H. Fischer) represents that with certain exceptions, plaintiff is a good woman, cursed with an ungovernable disposition and a seeming overbearing and uncontrollable passion or desire to be what might be termed a 'manly woman'; that the plaintiff (meaning the plaintiff in said divorce suit) positively and emphatically refuses to content herself in the sphere usually occupied by a woman in all her loveliness and sweetness, but insists on elevating herself to that high place and pinnacle, and arrogating unto herself the functions of 'Lord and Master'; failing in which plaintiff determines to rule or ruin. Defendant avers that plaintiff is now occupying a luxuriously furnished apartment, provided for her by her ardent admirer, the defendant; that she has every convenience that modern inventions and prudent science have provided; the latest and most fashionable clothes, money to spend and an unstinted and unlimited privilege of anything that her 'Cæsar'-like heart may crave or yearn for, but like the celebrated 'Cæsar' that figured in the country's history, she aims to conquer, and attempt to deprive this defendant of the last privilege, poor as it is, that he has dared to reserve unto himself; that of keeping a little lunch money to meet his expenses when performing the continuous and dangerous duties of a city fireman (meaning by the said paragraph aforesaid, as will appear therefrom and from the context of the entire matter, to charge that the plaintiff in said divorce suit, Mrs.

Allison, then Fischer, and her mother, one of the plaintiffs in this suit, is a 'manly woman', and that in their marital relations they arrogated to themselves the functions of 'Lord, and Master,' and that they were of such stubborn natures that they would go to any lengths, even to the extent of ruining their husbands to accomplish the end they are charged to have desired; that they are cursed with an ungovernable temper and an overbearing disposition, and are so cursed to the extent that in their marital relations they fail to recognize or distinguish as between theirs and their husbands' respective duties and rights)."

" 'The Telephones of Plenty.

" ' "Defendant (meaning however the defendant in said divorce suit, Chas. H. Fischer) avers that this is his first matrimonial venture, and he most earnestly and sincerely desires to remain the remainder of his days with the plaintiff, as she bound, contracted and obligated herself to do, and that if plaintiff is now in want or in destitute circumstances, it is through no fault of his; that if plaintiff will not allow her desire to be a man and the curse of being a woman to prey so heavily upon her troubled brain, and will only go to the telephone which hangs on the wall near her luxuriously furnished room and call 'Preston 1294', which she could have learned during the time which she and defendant have lived together as man and wife, she can yet obtain, as she has always obtained, all those necessaries of life in the way of food and drink, and if perchance her brow becomes flushed with any of the ills of which sin cursed humanity develops, that she call 'Preston 1091' and she will be furnished as she has been heretofore, every healing balm and anæsthetic known to proud science, all of which plaintiff well knows, if she will only banish the thought of being a man a sufficient interval of time to recall the numbers to her memory, which she has ever been privileged to use and will continue to be so privileged."

" 'An Inherited Disposition.

" ' "Defendant (meaning the defendant in said divorce suit Chas. H. Fischer) further avers the facts to be that the mania of ruling or ruining is imbibed, embedded, and instilled in the breast of plaintiff (meaning plaintiff in said divorce suit) she having come to the same most honestly, for which this defendant does not harshly condemn her; that plaintiff take some steps to curb that insatiable desire she inherited, which is so manifest in the entire family, including another member thereof, her mother, who has succeeded in conquering her husband, until now he bows at her feet in meek submission like a submissive subject at the feet of a royal potentate (meaning by said paragraph to charge that the disposition to be quarrel-

146 S.W.—17

some, vicious, ungovernable, contentious, manly, extravagant, unruly, unkind, immodest and in fact anything but what is in accord with the disposition of a virtuous, modest and refined lady, was inherited by the plaintiff in said divorce suit, the said Mrs. Fischer, now Mrs. Allison, from her mother R. L. McDavid, the plaintiff in this suit, and further meaning to charge that the said Mrs. Fischer, now Allison, and her said mother drink and are intemperate in their habits, and everything charged and alleged of the Mrs. Fisher now Allison, in the answer in said divorce suit, they were rough, course and degrading).

" ' "Defendant avers that plaintiff, like the wicked, has fled when no one pursues; that the fact is that this defendant has each time heretofore when he was wilfully and ruthlessly abandoned by plaintiff, persuaded her to return, and at this time to escape and evade the earnest appeals emanating from a heart prone to love, and pick an opportune time without the knowledge of the defendant and vacated his apartments and abandoned him without his knowledge or consent while he was absent."

" 'Wife Wore Red Kimona.

" ' "Defendant (meaning defendant in said divorce suit) avers that at all times he has been considerate of plaintiff's feelings and careful of what criticisms would likely be indulged in by a vulgar and critical public; and that on one occasion he dared to suggest to her the· impropriety of going to town so often and of gracing her precious form in a loud, red kimona, and red slippers, whereupon and for that alone plaintiff again abandoned him as she has done many times during his married life, in keeping with those characteristics so manifest during her first marriage when she would pre-emptorily vacate the premises and abandon her first husband, until at last, trouble hearted soul that he was, he sought refuge for a calm and peace that passes comprehension in the wilds and among the hills of Dear Old Tennessee. Defendant (meaning the defendant in said divorce suit) says that plaintiff (meaning the plaintiff in said divorce suit) is now being furnished everything that she needs by him at his own proper cost and expense, and will continue to be so provided; that her house rent is paid for the present month, and that from the rent and revenues derived from subrenting and subletting rooms she realizes over and above the mean amount expended for rent the sum of $20; that plaintiff needs nothing whatever, and if she does she has only to ask this defendant, who has never refused her a request that a normal mind would request, and that if he is forced and compelled to pay the sum requested or any sum whatever, that he will be obliged and compelled to borrow the money to pay the same; that he is now behind with a grocery and drug bill, and has borrowed money, obtained for the purpose

of providing the actual necessaries of life, and that he cannot possibly earn more than $90 per month, out of which he has to provide for himself, which cannot be done and comply with the request of the defendant (meaning plaintiff in said divorce suit)."

**" 'Husband's Home is Waiting.**

" ' "Defendant avers that the home he has provided for plaintiff is ever ready and open to her; that there is no occasion for her to petition the court, when she only needs to request of him.

" ' "Wherefore, premises considered, defendant prays that injunctions heretofore issued be dissolved, annulled and vacated; that the prayer of plaintiff for alimony be denied and that on final hearing hereof that her petition for divorce be refused, and for such other and further relief, general and special, as the proof may show to be just and right upon the trial hereof, as in duty bound will ever pray." '

"That foregoing article was a false, scandalous, and malicious libel directed against plaintiffs in this case and their said daughter and entire family and purported and meant to, and did, charge that the plaintiff Mrs. R. L. McDavid and her said daughter were immodest, unrefined, contentious, ungovernable, violent, manly, undignified, quarrelsome, wicked, and unappreciative in their family relations; that they are addicted to drink and afflicted with a mania to be men; and arrogate to themselves in their family relations the station and part of their husbands, and that in their ungovernable desire to rule and boss their husbands they would rather ruin their said husbands than to be defeated in such purpose; that afterwards, to wit, in the issue of the Houston Chronicle and Herald, of date Monday October 24, 1910, the defendant republished and circulated said false, scandalous, and malicious libel, and called especial attention thereto under the following headlines and in the manner following, to wit:

**" 'Fischer Sent to Jail for Contempt of Court.**

**" 'Respondent in Divorce Suit Failed to Comply with Order to Pay his Wife's Alimony.**

" 'Unless the court changes its mind or unless some friend comes to the rescue of City Fireman Chas. H. Fischer, the latter will have to spend an indefinite period in the county jail, where he was remanded Monday morning by Judge Hamblen of the 55th District Court for failure to pay $25 alimony to his wife Leora Alice Fischer, who instituted divorce proceedings against her husband some weeks ago.

" 'During the middle of September, Mrs. Fischer began divorce proceedings against her husband, who filed an interesting answer, protesting that he still loved his wife

and that he would antagonize his better half in her efforts to secure a decree of separation. In the meantime Judge Hamblen entered an order in the case on September 26th, directing Fischer to pay his wife $25 per month. On October 2nd, the regular pay day, Fischer drew his $90, but has so far failed to convince the court that the mandate issued on September 26th, was complied with. Spirited arguments on the part of attorneys representing Fischer failed to change the mind of the court against Fischer, and the latter was taken to the county jail to purge himself of contempt, and to remain there until the $25 is forthcoming.

" 'Attorneys for Fischer attempted to convince the court the order issued on September 26th did not apply to salary earned for September, and expressed a willingness to turn over $25 of October's returns from the city treasury. This the court did not take as a valid excuse and remanded Fischer to jail. The defendant was given time to don citizen's clothing in place of his fire uniform, in which he appeared in court. Fischer was taken to jail by Deputy Sheriff Hillendahl.

" 'Counsel for defendant urged that the defendant had spent his September salary, and had nothing left, but the court was obdurate, and proceeded to instruct the deputy sheriff as to the disposition of the city fireman.'

"That the defendant, by and through its agents, servants, and employés, to wit, on the several dates hereinbefore set out, wrongfully and maliciously sent and delivered and caused and procured to be sent and delivered the aforesaid false, scandalous, and malicious libel, as thus published in said paper of Houston Chronicle & Herald, unto Dr. W. R. Curham, B. F. Huggens, and W. E. Maney, of Smithville, Bastrop county, Tex., and the said libel was by means of such sending and delivery thereof received and read by the said Dr. W. R. Curham, B. F. Huggens, and W. E. Maney, and divers other persons, as thereby published and circulated by the said defendant to said divers persons. That, by reason of the writing, publishing, and circulation of said false, scandalous, and malicious libel by the said defendant of and concerning the said plaintiffs, they the said plaintiffs are greatly prejudiced, degraded, and injured in their aforesaid good name, fame, credit, and reputation, and are held up and exposed and brought into public infamy, disgrace, contempt, ridicule, and hatred, and that by reason of the premises aforesaid divers good and worthy citizens of this state to whom the innocence and integrity of the said plaintiff and each of them in the premises were unknown have on the occasion of the writing, publication, and circulation of said libel, and from thence hitherto refused and still do daily more and more refuse to have any

acquaintance or discourse with plaintiffs, as they were before accustomed to do. That the said daily paper, the Houston Chronicle & Herald, has a wide circulation in Bastrop county, Tex., and throughout each and every county in the state of Texas, and throughout many other states of the Union, and is widely circulated and read. That by reason of the writing, publication, and circulation of the said libel, as aforesaid, the said plaintiffs and each of them have suffered great anxiety and distress of mind, been greatly injured and prejudiced in many other respects, and that by means of the premises they and each of them have sustained actual damages in the sum of twenty-five thousand dollars ($25,000), and by reason of the willful and malicious acts of the said defendant as aforesaid are entitled to recover exemplary damages in the sum of twenty-five thousand dollars ($25,000). Wherefore, premises considered, plaintiff prays that the defendant be cited in the terms of the law to appear and answer this petition and that, on final hearing hereof, they have judgment for their damages aforesaid, and all costs of suit, and for such relief as to which they may be entitled, in law or in equity, general or special, and as in duty bound will ever pray."

Sam Schwartz, of Houston, and Orgain & Maynard, of Bastrop, for appellants. Hunt, Myer & Teagle, of Houston, for appellee.

KEY, C. J. (after stating the facts as above). [1] We now have in this state a statute (Laws 27th Leg. c. 26) which defines what shall constitute a libel, which statute is copied in full in the opinion of this court in Walker v. Light Publishing Co., 30 Tex. Civ. App. 165, 70 S. W. 555. By the first section of that statute it is declared that "a libel is a defamation expressed in printing or writing, or by signs and pictures or drawings tending to blacken the memory of the dead, or tending to injure the reputation of one who is alive, and thereby expose him to public hatred, contempt or ridicule or financial injury, or to impeach the honesty, integrity or virtue or reputation of any one, or to publish the natural defects of any one, and thereby expose such person to public hatred, ridicule or financial injury." The second section declares that the truth of the matter complained of shall constitute a defense to the action, and that the defendant may plead and prove the circumstances and intentions under which the libelous publication was made and any public apology, correction or retraction in mitigation of exemplary or punitive damages. The third section prescribes what shall be deemed privileged, and therefore not the basis of an action for libel, without proof of actual malice. The portion thereof which is pertinent to this case authorizes a fair, true and impartial account of the proceedings in a court of justice, unless the court prohibits the publication of the same, or any other official proceeding authorized by law in the administration of the law. But if it be shown that such publication though fair, true and impartial, was maliciously made, then the publication is not privileged.

In the Walker Case above cited it was held by this court, and we so hold in this case, that, when a libel is charged within the purview of the statute, it is not necessary for the petition to allege any special damage. We are of opinion that the effect of the statute under consideration is to abolish the distinction which exists at common law between libel per se and libel otherwise, in so far as the right of recovery is concerned. Of course, in a certain sense, the class of things which are said to constitute libel per se at common law may be said to be more libelous than certain other things which constitute libel within the purview of the statute; but the latter, as well as the former, constitute libel, and this is true because the statute so declares.

[2] It is strenuously contended by counsel for appellee that the petition stated no cause of action, not only because of the failure to allege special damage, but for the reason and because the publications complained of contained nothing that reflected upon any one, and, if they contained any libelous statements, they contained nothing to show that such statements had reference to either of the plaintiffs. While it is true that the first publication did not mention the name of any person, still we are of opinion that it tended to injure the reputation of Mrs. McDavid, if the two publications together, considered in connection with all the other facts alleged, sufficiently identified her as the mother referred to in the first publication. If the innuendo and other averments in the petition are true, we think it would be reasonable to conclude that the publications referred to tended to expose Mrs. McDavid to public hatred, contempt, or ridicule; and if it had that effect and was not true, and not privileged, it constituted a libel within the purview of the statute. We think the language "public hatred," as used in the statute, signifies a public or general dislike or antipathy. According to the Century Dictionary, one of the meanings of the word "hate" is "to have little regard for, or less than for some other; despise in comparison with something else regarded as more worthy." And we think it is used in that sense in the statute. We do not regard it as necessary to discuss the words "contempt" or "ridicule." The answer in the divorce suit in one of the courts at Houston, the publication of which is here complained of, made certain charges against the plaintiff in that suit which tended to expose her to public hatred, contempt, and ridicule, and by inference, and in effect, charged that her mother was of the same

class and possessed similar faults. It may be conceded, and it is true, that the document referred to did not charge the plaintiff in that suit or her mother, a plaintiff in this suit, with a violation of any penal law, nor with a lack of chastity or honesty; but it did charge them with being guilty of conduct generally regarded as unbecoming and improper, and calculated to bring upon any woman who so demeans herself public hatred or dislike and contempt and ridicule.

[3] Counsel for appellee assert the proposition, which may be conceded as true, that in order to constitute libel, the defamatory words complained of must refer to some ascertained or ascertainable person, and that person must be the plaintiff. It is also asserted that if the words used contain no reflection upon any particular individual, ascertainable solely from the publication, no innuendo can make them defamatory, or make certain the person who was uncertain before. We cannot yield assent to the latter proposition. Santa Fé Town Site Co. v. Harris, 125 S. W. 77, and Galveston Tribune v. Guisti, 134 S. W. 239, cited by counsel in support of that proposition, are not regarded as analogous; and, besides, the Supreme Court has granted a writ of error in the Guisti Case, and it is still pending in that court. This court has heretofore had occasion to consider the question of identity in Houston Printing Company v. Moulden, 15 Tex. Civ. App. 586, 41 S. W. 381, and Schultze v. Jalonick, 14 Tex. Civ. App. 663, 38 S. W. 264. In the Moulden Case no name was mentioned in the publication, and the means of identification in that case were no more than they are in this case. In that case the publication read: "Indignation was expressed at the chaining together of a man and woman. Considerable indignation was expressed at the Grand Central Depot yesterday at a species of brutality that ought to deserve some punishment. A young man and his wife were chained together by the necks and were in charge of an officer en route to some town in North Texas. The young man it seems, lives at Beaumont, and in order to get license to marry the girl he swore falsely as to her age. The girl herself had committed no offense known to the law, and yet she was treated just as a convicted felon. It is the policy of the law to encourage the assumption of the conjugal yoke, rather than to punish those who have assumed these responsibilities." The plaintiff in that suit was the sheriff of Collin county, and at the time referred to in the publication was at the Grand Central Depot in Houston, and had in his custody and under arrest a young man who was accompanied by his wife, but who was not chained to him, nor otherwise restrained or molested; and, in disposing of the question of identity, this court said: "Appellant also complains by assignment that the court erred in overruling the first and second special exceptions to the petition, be-

cause the petition affirmatively shows that the libelous publication does not mention the plaintiff, directly nor indirectly, nor does it refer to him or describe him in any manner whatever, and because the alleged libel does not refer to plaintiff or his office by 'name, fame, or description,' nor include or reach him by naming, mentioning, or description of any circumstance known to the public, nor name any transactions which refer or point to the plaintiff. It was not necessary to make the article published libelous that plaintiff should have been named, if he was pointed out by circumstances. The officer in charge of the prisoner, Foreman, was the person libeled, and the facts show that the plaintiff is that person. The libel, with the colloquium and innuendo, undeniably identifies the plaintiff as the officer guilty. It is only necessary that the words refer to some person ascertainable from the words used. Any one who was or should become conversant with the facts could not mistake the person and the officer accused. 13 Am. & Eng. Ency. Law, 391, 392, and notes; Newell on Slander & Libel, p. 258, § 22, illustration 4. The words applied to plaintiff, and could not apply to any one else. Odger on Libel & Slander, 126 to 131, inclusive and notes. The court did not err as assigned."

In the instant case, while the first publication did not mention the name of any one, it described the plaintiff in the divorce suit as having been married before and divorced from her former husband, and described the defendant as employed by the city of Houston as a fireman and captain of a fire station, and stated that his salary under that employment was $90 per month. The second publication stated in terms that Mrs. Leora Alice Fischer had brought suit against her husband Chas. H. Fischer, who was described as a city fireman, and the publication stated that he had filed an interesting answer, protesting that he still loved his wife and would antagonize her efforts to secure a decree of separation, and that on the regular pay day he drew his $90, but failed to comply with the order of Judge Hamblen of the Fifty-Fifth district to pay $25 of that sum to Mrs. Fischer as alimony. The second publication tends to supply what was omitted from the first, and to identify the plaintiff in that suit; and we are not prepared to say that persons acquainted with Mrs. Fischer and her mother, upon reading the two publications, might not reasonably conclude that they were the two women referred to in the first publication. At any rate, the two publications furnished a clew by which that fact could be ascertained, and therefore they tended to do that which the libel statute prohibits.

[4] As to the question of the publication's being privileged, we hold that the court should not have sustained the demurrer on that account, because the petition alleged that in making the publication the defendant

was actuated by malice; and, if that averment can be sustained by proof of actual malice, the publication was not privileged. If the proof fails to show such malice, then the defense referred to will be available.

Our conclusion is that the trial court committed error in sustaining the demurrer to the plaintiffs' petition, and, for that reason, the judgment is reversed and the cause remanded.

Reversed and remanded.