## ENTERPRISE CO. v. ELLIS.

### No. 2903.

Court of Civil Appeals of Texas. Beaumont.

Oct. 29, 1936.

Orgain, Carroll & Bell, of Beaumont, for appellant.

Gilbert T. Adams, of Beaumont, for appellee.

O'QUINN, Justice.

Suit by appellee against appellant for damages for an alleged libel growing out of a publication appearing in the Beaumont Journal, a daily newspaper published and circulated by appellant on December 18, 1933. Appellee's petition set out the publication complained of in haec verba, which reads:

"Pet Goose Lost For Two Days Found
, In Oven."

"How a goose was reported lost by its owner for two days then to be found by two Beaumont detectives calmly sitting in an oven of the owner's stove was officially reported at police Headquarters Sunday.

"Mrs. J. O. Ellis, 1408 Forsythe street, the owner, reported to police that someone had stolen her pet goose from her front yard on December 14. She was very much worried and wanted to know if the police couldn't do something about it.

"Detective Henry Thomas and Demmie Hayes, two of the city's expert crime detectors, were assigned to the case.

"They searched high and low and even questioned neighbors about the theft but no goose had apparently disappeared in thin air.

"The officers began search of the house. Pet geese, they said, had a way about them of wobbling into unexpected places.

"One of the officers opened the stove. There sat the goose, and the fowl meekly but with loud squaks, limped from the oven to the floor while the astonished owner looked on in amazement, for on two different occasions fires had been built in the stove and the bird had survived."

Appellee alleged that at the time said publication was made she was a widow about seventy years of age, highly venerated, respected, honest, upright, and honorable, and enjoyed the esteem and respect of her neighbors, and that by reason of and as a direct and proximate result of the publication and the circulation of same, she was ruined in her good name and her reputation, and that her integrity had been questioned, and that she had become an object of jest and ridicule and her mentality questioned, by reason of all which as the direct and proximate result of said publication she had suffered damages in the sum of $10,000. Her petition contained many and repeated allegations as to the falsity of the matter published, excepting only that she was the owner of the goose and that same had been stolen, and that the falsity of said publication was known by appellant, but was purposely and deliberately made, and set out in various ways how and why the matter stated in the publication constituted a libel on her, causing her great anger, shame, humiliation, and loss of respect of her former friends and neighbors, and the holding of her up to public ridicule and shame, and causing her

mentality to be questioned, and she a jest to the public, to her great mental suffering and humiliation.

Appellant answered by general demurrer, several special exceptions, a general denial, and set up its good faith in uttering said publication, and specially answered, as evidence of its good faith and lack of ill will towards appellee, that a day or so after the alleged libelous article was published, it published in its said paper in the same character of type as was used in the original publication, the two following articles:

(1) "Negro Is Held In Theft Of Goose Discovered in Oven"

"A Beaumont negro was held by police Tuesday on five charges of chicken theft following his arrest at his residence in the 400 block Crockett street at which time officers found a goose secreted in a cook stove, the fowl having been stolen from Mrs. J. O. Ellis, 1408 Forsythe street.

"Mrs. Ellis reported that the goose had disappeared from her back yard December 14, two days later police arrested the negro and found the goose, alive, in the negro's stove.

"The goose was not found on the Ellis premises as erroneously reported.

"Charges are to be filed against the negro Tuesday, according to police."

(2) "A goose stolen from Mrs. J. O. Ellis, 1408 Forsythe street, several days ago was found by Demmie Hayes and Henry Thomas, city detectives, hidden in an unused stove in the 400 block of Forsythe street. It is believed that the goose was stolen by a negro living nearby who was arrested for chicken theft Saturday."

The cause was tried to a jury upon special issues, which were answered in appellee's favor, and upon which answers judgment was rendered for appellee in the sum of $2,000. Motion for a new trial was overruled, hence this appeal.

The facts are that Mrs. J. O. Ellis, an elderly widow lady sixty-eight years of age, resided at 1408 Forsythe street in the city of Beaumont, and was the owner of a much prized pet goose. It disappeared about the time mentioned in the alleged libelous publication. She was worried over the loss of her goose, but made no search nor inquiry in her vicinity for the goose. Her daughter, who worked at the city hall in Beaumont, and who in going to work passed the police station, mentioned to the police that the goose had disappeared the night before, and as they were then investigating the theft of some chickens in said vicinity requested that they also watch for the goose. Two members of the city detective force were already investigating the chicken thefts, and in searching for the missing chickens and the person who stole them, they arrested a negro who confessed stealing the chickens and admitted stealing the goose, and showed the officers where he had hidden it. It was in an old cast off stove in a back alley, and when he showed it to the officers they took the goose and returned it to Mrs. Ellis. She had not made any request of the police as to the goose, nor of any one, and was not aware that her daughter had mentioned the matter to the police until afterward. A reporter for the paper prepared the article complained of and it was published. Later, finding that the matters stated in the first publication were not true, other than that Mrs. Ellis owned a goose and that it had been stolen, and restored to her by the city officers, appellant published the last two articles set out above by way of correction. Mrs. Ellis did not at any time communicate with the publishers of the paper, nor did they communicate with her.

Mrs. Ellis testified that she had been living in Beaumont and the neighborhood where the matter occurred for some thirty-two years, and enjoyed the confidence and respect of her neighbors and the general public. That she was greatly angered and suffered great mental anguish and humiliation and shame because of the matters stated in the publication, as it would cause her friends, neighbors, and the general public to lose confidence in her and to think she was untruthful because of the statements she was purported to have made to the police officers, and that she was mentally unbalanced, and that because of such publication she had become the jest of the community and an object of ridicule in the mind of the public, and that she had lost her mind and was crazy, by reason of all of which she suffered injury to her reputation, and great mental worry, shame, and humiliation.

One witness in talking to her son about the matter said it looked like his mother was "goofey," and another, a business man in the vicinity, with whom her son was trading, voluntarily inquired of the son, "What is the matter with your mother, is she kinder losing her mind," and when the son said "Why no, what do you mean," the man said "About the goose," and the

son replied, "No, she hasn't lost her mind, she is as sound mentally as she ever was," and the man said, "How in the world could a woman put a goose in the oven of her stove and build two fires and not know it, and the officers finally had to come there and find it for her." We gather from the record that the matter was pretty generally discussed in the neighborhood.

Appellant's sixth and seventh assignments of error urge that the court erred in overruling its general demurrer, and in refusing its request for an instructed verdict. The assignments are overruled. The petition stated a cause of action, and the evidence raised the issue of damages. Article 5430, R.S.1925, provides that "a libel is a defamation expressed in printing * * * tending to injure the reputation of one who is alive, and thereby expose him to public * * * ridicule, * * * or to impeach the * *. * reputation of any one, or to publish the natural defects of any one and thereby expose such person to public * * * ridicule." It is well settled, under this statute, that in libel suits recovery may be had for mental suffering —subjecting one to humiliation and ridicule —caused by wrongful publications. 27 Tex.Jur. §§ 55, 56, pp. 696–698; Belo & Coe v. Fuller, 84 Tex. 450, 19 S.W. 616, 31 Am.St.Rep. 75; Walker v. San Antonio Light Publishing Co., 30 Tex.Civ.App. 165, 70 S.W. 555, 558; Guisti v. Galveston Tribune, 105 Tex. 497, 150 S.W. 874, 152 S.W. 167; Hibdon v. Moyer (Tex.Civ. App.) 197 S.W. 1117; McFadden's Publications v. Turner (Tex.Civ.App.) 95 S. W.(2d) 1027, 1030. Issues submitting these several questions to the jury were answered in appellee's favor. We think the findings have support in the evidence, and afford a basis for the judgment.

We overrule the assignment that it was error for the court to fail to define the term "mental anguish" used in his charge. These words are as old as the English language, and are words of ordinary meaning, understood by every person of average intelligence, and hence no definition was required. Appellant cites us to the case of Western Union Telegraph Co. v. Gauntt (Tex.Civ.App.) 28 S.W.(2d) 207, as conclusive of the question. We do not believe that the cited case is applicable. There is at least a clear distinction. In the cited case the appellant not only objected to the court's charge because the words "mental anguish" were not defined, but also submitted a definition to be given which was refused. Here no definition was offered. There damages were shown because of mental pain and anguish caused to Gauntt by the failure to deliver to him a telegram announcing the serious sickness of his sister because of which he failed to reach her before she died. The court held that the trial court should have instructed the jury that "they should exclude all mental disturbance or pain otherwise arising, such as mere anger or resentment or mental pain caused by the sickness and death of his sister." Here the mental anguish—humiliation caused by the libelous publication which tended to expose appellee's supposed natural defect (want of soundness of mind) and tended to hold her up to public ridicule, was caused directly by the publication, which the statute denounces. Moreover, the appellate court in the cited case did not reverse the case on that point, but because other issues given were upon the weight of the evidence. But aside from any distinction of the cases, we hold that the words "mental anguish" are words of such common import that they are fully understood by the general public, and being such, under the statute, do not have to be defined. Magnolia Petroleum Co. v. Long (Tex.Com.App.) 86 S.W.(2d) 450, 455.

Special issue No. 16, as submitted to the jury, reads:

"What, do you find from a preponderance of the evidence, if any, to be the amount of money, if any, if paid now, would reasonably and fairly compensate the plaintiff for the injury, if any, suffered by plaintiff, proximately caused, if you have so found, by the publication of said article, if you find same was so published."

"Answer by stating the amount in dollars and cents."

"In estimating said sum, if any, you may take into consideration the mental anguish, if any, you so find, proximately caused plaintiff by said publication, if any, and the injury, if any, to plaintiff's reputation proximately caused plaintiff, if you have so found, by said publication, if any; but you cannot take into consideration any injury or damage occasioned plaintiff by any truthful portions, if any, of said article. In estimating said sum, if any, you may also take into consideration any mitigating circumstances, such as, the defendant's publishing that the negro had stolen said goose,

456

and that same was not found in Mrs. Ellis' stove as originally reported."

 Appellant objected to this issue for several reasons, among them: "(c) Said general instruction as to what could be considered by the jury in assessing the damages is erroneous in that it does not exclude from the consideration of the jury the following: (2) any resentment that the publication may have caused the plaintiff by reason of the fact that it was published and circulated by the defendant." Error is asserted against the charge for the reason stated in the objection. A careful search of the evidence fails to disclose that Mrs. Ellis said she resented the publication. However, she did testify in answer to the question as to how she felt when she read the article: "I cant express my feelings, sir, I don't think * * * I was awfully angry, disgusted and humiliated to death, and I haven't got over it yet. It would humiliate anybody." While she did not say she resented the article, she did say its publication made her angry. Anger is but an emotion of the mind produced by a real or supposed injury—an emotion of displeasure caused by a real or supposed injury. Mental emotions or feelings are rather difficult to clearly express. Mrs. Ellis believing and feeling that the publication tended to and did hold her up as an object of ridicule, that it was an insinuation against her mental soundness, as well as an impeachment of her truthfulness considering the statements she was said to have made to the officers, naturally was aroused mentally and her answer to the question as to her feelings—her feelings being but her reaction to the matters stated in the publication—we think was succinct, clear, and the concrete result of her mental status. We know of no better words she could have used to state the injury to her feelings, which was the object of inquiry and the basis of her right to recover. 27 Tex.Jur. §§ 55 and 56, pp. 696–698, and so proper for the jury to consider. Furthermore, under Thurman v. Chandler, 125 Tex. 34, 81 S.W.(2d) 489, 492, it is not believed that the matter as presented shows error. There the charge was similar to the instant charge, and the facts involved a similar finding, and the objection to the charge substantially the same as here. In passing upon the assigned error (failure to exclude certain elements of damage), the court said: "The objection under (d), as worded, would indicate to the court that defendants desired a general charge, not a mere definition or explanation. The matter as presented shows no error on the part of the trial court." The assignment is overruled.

What we have said disposes of assignment No. 3.

 By its fourth and fifth assignments, appellant urges that the verdict and judgment of $2,000 is excessive. The record discloses that none of the officers nor agents of appellant knew Mrs. Ellis, and there is nothing in the record to indicate that the publication grew out of or was based upon any knowledge of or feeling towards her, but, we think, was motivated purely on what appeared to be a rather ludicrous happening to the goose. The undisputed facts relative to the theft of the goose, we think, show that the reporter of appellant jumped to certain conclusions of his own, and without investigation to ascertain the truth of the matter, wrote what he deemed an amusing article for public consumption, naming Mrs. Ellis the butt of a story, and the editor of appellant passed it for publication. While this was reprehensible and libelous, yet when, on the next day after the article was published, it was found to be almost wholly false, the publishers of the paper that day published in both of its papers—The Enterprise and The Journal—a correction of the matter correctly stating the facts and that the goose was not found in its owner's stove, but in an old abandoned stove in a back alley where the negro thief had placed it. The whole thing seems more mirth provoking than serious, but as it did have the tendency to expose Mrs. Ellis to public ridicule and to deeply wound her feelings, it was actionable. We have concluded that the judgment is excessive and that, under the actual facts, both as to the nature of the publication and its results, $500 would be a fair and reasonable compensation for the injury sustained by appellee. If appellee will within fifteen days file a remittitur reducing the judgment to $500, then the judgment will be reformed and affirmed for that amount, otherwise, the judgment is reversed and remanded for another trial.